Argued and submitted September 15, judgment of Tax Court
affirmed December 9, 2010

## CLACKAMAS COUNTY ASSESSOR,
*Appellant,*

*v.*

## VILLAGE AT MAIN STREET PHASE II, LLC,
*Respondent.*

## (TC 4877; SC S057858)

245 P3d 81

Henry C. Breithaupt, Judge.

Kathleen J. Rastetter, Assistant County Counsel, Oregon City, argued the cause and filed the brief for appellant. With her on the brief was Clackamas County Counsel.

Donald H. Grim, Greene & Markley, P.C., Portland, argued the cause and filed the brief for respondent. With him on the brief was David P. Weiner.

KISTLER, J.

## KISTLER, J.

 Once a tax assessor has determined the value of property and listed it on the assessment roll, the assessor may not correct the value listed on the assessment roll merely because he or she "would [now] arrive at a different opinion of value." ORS 311.205(1)(b).[1] An assessor, however, may add property to the assessment roll that "has from any cause been omitted, in whole or in part," from the assessment roll. ORS 311.216. The question that this case poses is whether the Clackamas County tax assessor (the assessor) may add, as omitted property, the value of site developments to land already listed on the assessment roll. The Tax Court held that, because the site developments were an integral part of the land listed on the assessment roll, the assessor was not adding omitted property to the roll; he was merely correcting an undervaluation. *Clackamas Cty Assessor v. Village at Main Street Phase II*, ___ OTR ___ , ___ (Sept 1, 2009) (slip op at 11). On the assessor's appeal, we affirm the Tax Court's judgment.

Because this case arises on the taxpayer's motion for summary judgment, we state the facts in the light most favorable to the assessor. *Bergmann v. Hutton*, 337 Or 596, 599, 101 P3d 353 (2004). The taxpayer owns two adjacent parcels of real property in Clackamas County. As of January 1, 2004, the two parcels were bare, undeveloped land, and the assessment roll reflected the value of that undeveloped land.[2] After that time, the taxpayer began developing an apartment complex on the two parcels. In connection with that development, the taxpayer made improvements to the land; it graded the land, added roads, sidewalks, street lights, water and sewer lines, storm drains, electrical services and other utilities, and laid foundations for parking lots. The parties refer to those improvements as the site developments. The taxpayer also began constructing the apartment buildings.

---

[1] All references to the Oregon Revised Statutes are to the 2005 edition, unless otherwise noted.

[2] The assessment roll refers to the list of taxable property that the tax assessor prepares; the tax roll refers to the assessment roll after the county has levied taxes on the listed property and put those taxes on the roll. *See* ORS 308.210(1) (describing assessment roll); ORS 311.112 (describing tax roll). For ease of reference, we generally refer only to the assessment roll.

Each year, every county tax assessor must assess and list on the assessment roll the real market value of land within the county separately from the real market value of "all buildings, structures and improvements thereon." ORS 308.215. By statute, "land includes any site development made to the land," such as "fill, grading, leveling, underground utilities, underground utility connections, and any other elements identified by rule of the Department of Revenue." ORS 307.010(1)(a).[3] Because the legislature has specified that "land" includes "any site development," the value for any land listed on an assessment roll should include the value of both the land and the site developments.

In 2005, the assessor physically inspected the taxpayer's property to establish the value of that property for the 2005-06 tax year. At that point, the site developments were substantially complete, and the apartment buildings were approximately 25 percent complete. Although the assessor was aware of the site developments when he inspected the property in 2005, he assigned no value to them. Instead, the assessor established the value of the land for the 2005-06 tax year by a process known as "trending." Specifically, the assessor took the value assigned to the land for the 2004-05 tax year, which reflected only the value of the undeveloped land, and adjusted that value to account for the general trend in real estate prices.[4] The assessor then listed the trended valuation for the land on the assessment roll. The assessor took a different approach for the partially constructed apartment buildings. He specifically appraised the value of those partially constructed buildings and listed that value separately on the assessment roll, as ORS 308.215 requires.

In 2006, the assessor again physically inspected the taxpayer's property to establish the value of the land for the

---

[3] The parties assume that all the site developments that the taxpayer made to the land constitute "site development[s]" within the meaning of ORS 307.010(1)(a).

[4] All property subject to taxation is valued at 100 percent of its real market value unless otherwise provided by law. ORS 308.232. Each year, county assessors are required to conduct "ratio studies" to establish land value growth trends for specific types of property. See ORS 309.200 and ORS 309.203 (describing ratio study requirements). In years when certain taxable property is not physically appraised, the ratio is applied to equalize the property's real market value with comparable property. See ORS 308.233 and ORS 309.203. This process is called "trending." ORS 308.233(2).

2006-07 tax year. At that point, the apartment buildings were 40 percent complete. The land (and site developments) remained unchanged since the last physical inspection. The assessor appraised and added the increased value of the apartment buildings to the assessment roll but assigned no value to the site developments. Instead, the assessor again adjusted the previously established value of the land to reflect property value trends for that year.

In 2007, the assessor sought to add the value of the site developments to the assessment roll as "omitted property" under ORS 311.216. Doing so increased the value of the taxpayer's land listed on the assessment roll by approximately $1,000,000 and increased the tax liability by approximately $18,000. The taxpayer challenged the assessor's action, claiming that the site developments did not constitute omitted property. On cross-motions for summary judgment, the Tax Court ruled in the taxpayer's favor. Relying on its decision in *West Foods v. Dept. of Rev.*, 10 OTR 7 (1985), and a Department of Revenue rule reflecting that decision,[5] the Tax Court reasoned that, if an assessor failed to include the value of property that was "in existence at the time of an appraisal and [was] an 'integral part' of property that was physically appraised," then the assessor had undervalued the appraised property; he had not omitted property from the tax roll. *Clackamas County Assessor*, ___ OTR at ___ (slip op at 7).[6]

---

[5] In *West Foods*, the assessor had appraised the value of mushroom growing rooms but had not included in that appraisal growing beds contained inside the growing rooms. 10 OTR at 10-11. When the assessor later sought to add the growing beds as omitted property, the Tax Court reasoned:

"[T]he growing rooms were included in the 1973 appraisal. The growing beds were an integral part of the growing rooms and were part of the real property. The growing rooms were valued and placed upon the assessment and tax rolls. The failure of the appraiser to include the beds in the growing rooms resulted in an undervaluation of the growing rooms and not an omission of any 'buildings, structures or improvements' under the statute."

*Id.* at 11. OAR 150-311.216(2)(b) incorporates, in substantial part, that reasoning.

[6] The question in this case is whether the assessor may correct the assessment rolls for two prior tax years. The statutes discussed above bear on that issue; they do not prevent an assessor from assessing the property at its true market value for future tax years, although Article XI, section 11, of the Oregon Constitution (Measure 50) may limit a county's ability to tax the property at its true market value in those future years. *See Flavorland Foods v. Washington County Assessor*, 334 Or 562, 565, 54 P3d 582 (2002) (generally discussing Measure 50).

■ On appeal, the assessor argues that the Tax Court's decision in this case and the Department of Revenue rule are inconsistent with the omitted property statute. The assessor notes that ORS 311.216 provides that, "[w]henever the assessor discovers or receives credible information * * * that any real or personal property * * * has from any cause been omitted, in whole or *in part*, from assessment and taxation on the current assessment and tax rolls," then the assessor shall initiate a process to add the omitted property to the assessment or the tax rolls.[7] (Emphasis added.) The assessor reasons that there is no dispute that, in trending the value of the bare, undeveloped land, he did not assign any value to the site developments. It follows, the assessor concludes, that he omitted part of the land—the site developments—from the assessment roll and that, under the plain terms of ORS 311.216, he may add that property to the assessment roll.

Put more generally, relying on the statutory phrase "in part," the assessor contends that the legislature intended to permit an assessor to divide a unit of property into its component parts and, if the assessor can show that the value of any part of the property (even an integral part) is not reflected in the value of the property listed on the assessment roll, then the property has been omitted "in part" from the assessment roll and the value of the component part may be added to the roll.

The taxpayer, for its part, contends that, under ORS 307.010(1)(a), site developments are an integral part of the land. The taxpayer argues that, when, as in this case, the assessor has valued the land and listed the land on the assessment roll, he may not correct the value of the land listed on the roll merely because he failed to attribute any value to an integral part of the land. In so doing, the taxpayer argues, the assessor is not adding omitted property to the assessment roll; he is revaluing the property already listed on the assessment roll. The taxpayer acknowledges that there is some tension between the statutory prohibition on correcting an error in valuation judgment and the statutory authorization to add omitted property to the assessment roll.

---

[7] The text of ORS 311.216 is set out in an appendix to this opinion.

It reasons, however, that the line that the Tax Court's decision in *West Foods* and the Department of Revenue's rule draw between those two statutes is a permissible one that gives effect to both statutes.

As we understand the parties' arguments, they turn on an issue of statutory interpretation—does the statutory authorization to add property to the assessment roll that has been omitted "in part" apply to an integral part of property that is listed on the assessment roll.[8] In answering that question, we begin with the text of ORS 311.216. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting forth methodology). That statute authorizes an assessor to initiate a process for adding "omitted property" to the assessment roll when the assessor discovers that "any real or personal property * * * has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls."

The text of ORS 311.216 permits both parties' interpretations. It is possible to read the phrase "in part" narrowly, as the taxpayer does, to refer only to distinct units of property. If, for example, a taxpayer owns two adjacent lots but the assessor lists only one of them on the assessment roll, then the taxpayer's real property has been omitted, in part, from the assessment roll, and ORS 311.216 authorizes the assessor to add the second lot to the roll. It is also possible to read the phrase "in part" broadly, as the assessor does, to permit the assessor to treat an integral part of a single unit of property as property that has been omitted "in part." The text, standing alone, does not resolve the parties' dispute.

The context provides greater insight. Before 1907, the Oregon legislature authorized the Board of Equalization or the tax collector to add omitted property to the assessment

---

[8] In that connection, we note that the Department of Revenue rule on which the Tax Court relied is interpretative, not substantive. *See* OAR 150-311.216 (listing the statutory authorization for that rule as ORS 305.100); *Avis Rent A Car System, Inc. v. Dept. of Rev.*, 330 Or 35, 41, 995 P2d 1163 (2000) (ORS 305.100 gives the department authority to adopt interpretative, not substantive rules). It follows that the question before us is whether the department's rule is consistent with the statute—a question that requires us to interpret the statute independently. *See Avis*, 330 Or at 41 (stating that proposition).

and tax rolls without specific notice to the taxpayer. *See O. & C. R.R. Co. v. Lane County*, 23 Or 386, 393-97, 31 P 964 (1893) (opportunity to appear at the Board of Equalization sufficient; no additional notice required before the tax collector subsequently added omitted property); *O. & W. M. Sav. Bk. v. Jordan*, 16 Or 113, 116, 17 P 621 (1888) (so holding regarding the board). In 1907, the legislature enacted the provision that, with some amendments, is now codified as ORS 311.216. Or Laws 1907, ch 267, § 24.[9] Specifically, the 1907 legislature provided that, after giving the taxpayer notice, "the officer having possession of the roll" shall add "any real or personal property [that] has * * * been omitted, in whole or in part, * * * from the assessment roll or the tax roll." *Id.* The text of Oregon's 1907 omitted property statute is virtually identical to the text of Indiana's 1881 omitted property statute, *cf. Reynolds v. Bowen*, 36 NE 756, 758, 760-61, *adh'd to on recons*, 37 NE 962 (Ind 1894) (setting out the text of the Indiana statute and noting that the Indiana legislature reenacted the 1981 statute verbatim in 1891), and we infer from that fact that Oregon modeled its 1907 omitted property statute on Indiana's.[10] *See Stevens v. Czerniak*, 336 Or 392, 402, 84 P3d 140 (2004) (inferring from similarity between ORCP 36 and FRCP 26 that Oregon had modeled its rule on the federal rule).

It follows that two contextual sources inform our interpretation of Oregon's 1907 omitted property statute. The first consists of the Oregon statutes and cases that

---

[9] As enacted in 1907, the statute provided that, after giving the taxpayer notice:

"Whenever, after the return of the assessment roll to the county clerk by the board of equalization, the officer having the possession of the roll shall discover or receive credible information, or if he has reason to believe that any real or personal property has, from any cause, been omitted, in whole or in part, in the assessment of any year [for the last five years] from the assessment roll or the tax roll, he shall proceed to correct the assessment or tax roll in his hands, and add such property thereto * * *."

Or Laws 1907, ch 267, § 24.

[10] Many states have omitted property statutes. Two states—Indiana and North Dakota—have omitted property statutes that are virtually identical to the 1907 Oregon statute. Because North Dakota did not enact its omitted property statute until 1925, *Marshall Wells Co. v. Foster County*, 231 NW 542, 544 (ND 1930), it necessarily follows that Indiana rather than North Dakota was the source of Oregon's statute.

preceded that statute's enactment in 1907. *See Klamath Irrigation District v. United States*, 348 Or 15, 23, 227 P3d 1145 (2010) (context includes preexisting common law and statutory framework). The second consists of the Indiana Supreme Court decisions that interpreted the Indiana statute on which Oregon modeled its 1907 omitted property statute. *See State v. Stockfleth/Lassen*, 311 Or 40, 50, 804 P2d 471 (1991) (when Oregon adopts a statute from another state, we presume that the Oregon legislature intended to adopt the state supreme court's prior interpretations of that statute). Finally, we consider the 1951, 1971, and 1977 amendments to Oregon's omitted property statute, which expanded the reach of that statute.

Before 1907, the Oregon legislature authorized counties to tax real and personal property. The Codes and General Laws of Oregon, ch XVII, title I, § 2729 (Hill 1887). The legislature directed the assessor for each county to prepare an assessment roll listing the true cash value for all taxable real and personal property. *Id.*, title III, § 2752. After each taxpayer's name, the assessor would list on the assessment roll the description, acreage, and the value for each parcel of real property owned by the taxpayer. *Id.* § 2776. (Initially, the value listed for real property included the value of both the land and any buildings or improvements on the land. *Id.*) The assessor also would list a single entry reflecting the total value of the taxpayer's personal property. *Id.* To enable the assessor to prepare the assessment roll, the legislature required each taxpayer to give the assessor a verified list of all the taxpayer's taxable real and personal property. *Id.* § 2769. It also authorized the assessor to conduct a sworn examination of each taxpayer. *See id.* §§ 2759, 2769 (providing procedures and penalties regarding assessor verification of the value of the taxpayer's taxable property).

After the assessor prepared the assessment roll, the Board of Equalization had authority both to adjust the value of the property listed on the roll and also to add omitted property to the roll. *Id.*, title IV, §§ 2778, 2779; *see O. & W. M. Sav. Bk.*, 16 Or at 116 (holding that the board had statutory authority to add omitted property to the assessment roll without notice to the taxpayer). After the board had approved the assessment roll, the county court determined the funds

needed for county, state, and school purposes and levied a corresponding tax on the property listed on the assessment roll. *Id.*, title V, §§ 2783, 2784. Later, the county clerk submitted the assessment roll, together with a warrant authorizing the collection of the taxes, to the sheriff, who served as the tax collector. *Id.*, title VI, § 2794. Among other things, the legislature provided that,

> "[w]henever the assessor shall have omitted to assess any real or personal property liable to taxation in his county, it shall be the duty of the sheriff, upon discovering such omission, to assess the same and collect the taxes thereon, in like manner as other assessments are made and taxes collected * * *."

*Id.* § 2831. As noted, neither the board nor the sheriff was required, before 1907, to give the taxpayer notice before adding omitted property to the assessment roll.

Before 1907, two Oregon cases had addressed the board and the sheriff's authority to add omitted property to the assessment or the tax roll. In one case, the assessment roll listed some of the taxpayer's personal property but omitted $68,210 in money, notes, and accounts. *O. & W. M. Sav. Bk.*, 16 Or at 114.[11] In the other case, the assessment roll listed approximately 53,000 acres of the taxpayer's real property but omitted approximately 185,000 acres. *O. & C. R.R. Co.*, 23 Or at 389. In both cases, the property that had been omitted, in part, was not an integral part of the property that had been listed on the assessment roll. Rather, the partially omitted property in each case was separate from the listed property; it could be valued and transferred independently from the listed property.

Nothing in the Oregon cases that preceded the enactment of the 1907 omitted property statute suggests that the legislature would have understood that the words "in

---

[11] The taxpayer acknowledged that the Multnomah County assessor properly included $50,000 in money, notes, and accounts on the assessment roll but contended that the board erred by adding as omitted property $68,210 in notes that, in its view, were subject to taxation in other counties. *O. & W. M. Sav. Bk.*, 16 Or at 114. The court did not resolve that dispute but concluded that the taxpayer had sought the wrong remedy. *Id.* at 117-18. The taxpayer should have sought a writ of review from the board's decision rather than seeking to enjoin the tax collector from levying on the taxpayer's property. *Id.*

part" should be read as broadly as the assessor urges. *Cf. Klamath Irrigation District*, 348 Or at 37-38 (looking to Oregon cases that preceded the enactment of a 1905 Oregon statute to determine how the legislature would have understood one of the terms in that statute). That is, nothing in the Oregon cases that preceded the 1907 omitted property statute suggests that the legislature would have understood that the authorization to add property omitted "in part" from the assessment roll included the authorization to add an integral part of the property that was already listed on the roll.

■ A second contextual source informs our understanding of Oregon's omitted property statute. As noted, the text of Oregon's 1907 statute is virtually identical to the text of the omitted property statute that Indiana enacted in 1881 and reenacted in 1891. *Cf. Reynolds*, 36 NE at 758, 760-61 (setting out the text of the Indiana statute and recognizing verbatim reenactment of the 1881 law in 1891). And we presume that the 1907 Oregon legislature, having modeled Oregon's statute on Indiana's, intended to adopt the interpretation that the Indiana Supreme Court had given its statute. *See Stockfleth / Lassen*, 311 Or at 50 (stating proposition). We turn to that court's decisions.

The Indiana omitted property cases decided before 1907 typically involved personal property, such as notes and similar financial instruments. *See, e.g.*, *Reynolds*, 36 NE at 759; *Florer v. Sheridan*, 36 NE 365, 365 (Ind 1894); *Florer v. Sherwood*, 28 NE 71, 71-72 (Ind 1891); *Woll v. Thomas*, 27 NE 578 (Ind App 1891). Most of the Indiana cases arose after the administrator of a decedent's estate had filed an inventory of the estate's assets in a probate proceeding. Based on the difference between the inventory filed in the probate proceeding and the personal property listed on the assessment roll, the auditor (the Indiana official charged with determining whether property had been omitted) concluded that the decedent's personal property had been omitted in part from the assessment roll and sought to add that property to the roll.[12] In each of the cases, the question before the court was

---

[12] Indiana, like Oregon, did not require an itemized statement of notes, credits, and accounts. *Woll*, 27 NE at 580. Rather, the assessor made a single entry on the assessment roll for all that personal property. *Id.* Accordingly, in determining whether property had been omitted, the auditor sometimes inferred from the

whether the personal property listed on the assessment roll had been undervalued or whether some personal property had in fact been omitted in part from the assessment roll.

Frequently, that question turned on a factual issue: could the auditor infer that some of the decedent's notes had been omitted from the assessment roll because the aggregate value of the notes listed on the estate inventory was greater than the aggregate value of the notes listed on the assessment roll? The Indiana Supreme Court held that, as a general matter, the answer to that factual question was "no." It explained that the inventory may reflect the face value of the notes while the assessment roll may reflect a lower market value. *Florer v. Sherwood*, 28 NE at 72. The court held that, to establish that property has been omitted, the auditor "must know of specific loans and of specific credits which have been omitted, and upon which valuations may be placed." *Id.* Conversely, the court upheld the auditor's determination that some of the decedent's notes had been omitted from the assessment roll when, "after a long and painstaking investigation, [the auditor] found 'distinct, definite, and recognizable articles [of omitted property], which had not been listed and properly appraised for taxation by the assessor.' " *Reynolds*, 37 NE at 963 (quoting *Woll*, 27 NE at 580). That finding was sufficient to convince the Indiana Supreme Court that the decedent's notes had been omitted, in part, from the assessment roll, as opposed to having been undervalued.

It follows from the Indiana cases decided before 1907 that, for property to qualify as "omitted property," the property must be "distinct, definite, and recognizable articles, which had not been listed * * * by the assessor." *Id.* The requirement, stated in the Indiana cases, that the omitted property must be "distinct" from the property listed on the assessment roll is inconsistent with the assessor's position in this case that omitted property includes property that is an integral part of the listed property. Beyond that, none of the Indiana omitted property cases involved property that was an integral part of the property listed on the assessment roll.

difference between the aggregate value of the notes listed on the assessment roll and the aggregate value of the notes listed on the inventory for the estate that some notes had been omitted from the assessment roll. *See id.* (illustrating issue).

Given that context and the fact that the Indiana statute authorized the addition of any real or personal property "omitted, in whole or in part," we are persuaded that the 1907 Oregon legislature did not intend for the phrase "in whole or in part" to authorize the assessor to include an integral part of property that the assessor already had listed on the assessment roll.

Since Oregon enacted its omitted property statute in 1907, the legislature has expanded the definition of omitted property on three occasions: 1951, 1971, and 1977. We consider those amendments to understand how they bear on the assessor's argument in this case. In 1951, the legislature amended the omitted property statute to authorize an assessor to add to the assessment roll, as omitted property, "any buildings, structures, improvements or timber on land previously assessed without the same." Or Laws 1951, ch 577, § 1.[13] Textually, the addition of that phrase implies that, without the authority granted by the amendment, the assessor could not add, as omitted property, "buildings, structures, improvements or timber on land previously assessed without the same."

The legislative history supports that understanding. The State Tax Commission (the predecessor to the Department of Revenue) submitted a statement to the House Committee on Taxation in support of the amendment, explaining:

"Under the existing law, real property is defined to include the improvements thereon, and likewise all trees upon the

---

[13] As amended in 1951, the statute provided:

"Whenever, after the return of the assessment rolls to the county assessor by the board of equalization, the officer having the possession of the roll shall discover or receive credible information, or if he has reason to believe that any real or personal property, *or any buildings, structures, improvements or timber on land previously assessed without the same,* has from any cause, been omitted, in whole or in part, in the assessment [for the previous five years] from the assessment or the tax roll * * * he shall proceed to correct the assessment or tax roll in his hands * * *."

Or Laws 1951, ch 577, § 1 (new material italicized). That same year, the legislature also directed the assessor to list on the assessment roll the value of the land separately from the value of any buildings, structures, or improvements on the land. Or Laws 1951, ch 542, § 1.

land, and thus an assessment of real property is conclusively presumed to include the improvements and timber located thereon, even though such improvements and timber have not in fact been taken into consideration in making the assessment. By amending the omitted property statute so that it refers specifically to improvements and timber, a way would be provided to add the same to the rolls as omitted property."

Exhibits, House Committee on Taxation, HB 358 (1951). According to the Commission, the additional wording was necessary to avoid the "conclusiv[e] presum[ption]" that the assessor had included the value of any buildings, structures, and timber in the value of the real property listed on the assessment roll.

The State Tax Commission did not explain the source of that "conclusiv[e] presum[ption]," and no Oregon case had addressed that issue before 1951. However, the North Dakota Supreme Court had held in 1930 that, once the assessor listed the value of real property on the assessment roll, the auditor could not add, as omitted property, the value of any building or structure on that property to the value of the real property listed on the assessment roll; that was so even though there was no dispute that the assessor had not included the value of the building or structure in the value of the real property listed on the roll. *Marshall Wells Co. v. Foster County*, 231 NW 542, 544-45 (1930). As noted, North Dakota had modeled its omitted property statute on Indiana's statute, *see id.* at 544 (explaining that the North Dakota statute was "almost identical" to the Indiana statute), and the North Dakota Supreme Court relied on the Indiana decisions in *Florer v. Sherwood* and *Woll* in reaching its decision in *Marshall Wells Co.*, *id.* at 544-45. Although the State Tax Commission did not explain the source of its statement—that, without an amendment permitting it to add buildings, structures, and other improvements on the land as omitted property, the 1907 Oregon statute did not give the Commission that authority—the North Dakota decision provides one possible source.[14]

---

[14] Although many states permitted the addition of omitted property and most have a restrictive rule comparable to the one announced by the Tax Court, Oregon, North Dakota, and Indiana had statutes that authorized the addition of "property

In 1971, the Oregon legislature amended the omitted property statute again. The legislature provided that, if a taxpayer failed to report "the addition of any building, structure, improvement, machinery or equipment" in an annual report filed with the assessor, the property "shall be presumed to be omitted property subject to additional assessment as provided in [ORS 311.216]." Or Laws 1971, ch 574, § 3. The Department of Revenue explained its reason for requesting the proposed amendment:

> "If an entire building is omitted from the list of additions, it is classified as omitted property when discovered and is subject to assessment and taxation for the entire period since the addition or [for up to five] years.

> "Under existing statutes, however, if an addition to an existing building is omitted, then the addition cannot be classified as omitted property and is subject to taxation [in future tax years] only [after it is] discovered by the assessor. This bill would permit additions to buildings to be classified as omitted property and subject to the same penalties that exist for complete buildings."

Exhibits, House Revenue Committee, SB 149 (1971); *see also* Minutes, House Revenue Committee, May 7, 1971 (noting testimony before the committee to the same effect).

In 1977, the legislature added a second ground for presuming that "any building, structure, improvement, machinery or equipment" constituted omitted property. Or Laws 1977, ch 584, § 1. The legislature provided that, if the cost of that property as of January 1 exceeded the cost stated on the taxpayer's return filed with the assessor, the "excess cost adjusted to reflect its contribution to true cash value" shall be presumed to be omitted property. *Id.* After the 1971 amendment, an addition to a building, structure, or improvement was presumed to be omitted property if the taxpayer had failed to report it. The 1977 amendment expanded the presumption to apply when the taxpayer's return disclosed the addition of that property but underreported its cost.

---

* * * omitted, in whole or in part * * *." The decisions from those states thus provide a more reliable source for understanding what Oregon's statute permitted before 1951.

A representative from the Department of Revenue explained that the amendment "was addressed to the under-reporting of the costs of items of machinery that are added to industrial properties." Minutes, House Revenue and School Finance Committee, SB 119, June 27, 1977, 2 (testimony of Ted De Looze). He testified:

> "[U]nder the current practice, between physical appraisals [which were then conducted every six years], the county assessor recei[v]es a real property report from—in which the taxpayer reports additions and deletions from his plant. Often substantial amounts of value are lost when the tax-payer underreports the addition to the plant, as in cases where the cost of a piece of equipment is recorded but the true value, including the cost of installation, is not reported."

*Id.* The amendment provided a way to capture underreported value that otherwise would have gone untaxed until the next physical appraisal.

Those amendments expanded the concept of omitted property but did so in different ways. The 1951 and 1971 amendments created limited exceptions to the general rule that a component of property that is an integral part of property already listed on the assessment roll does not qualify as omitted property within the meaning of ORS 311.216. In creating limited exceptions to that general rule, both amendments accept and build on the same understanding of omitted property that we draw from the text and context of the 1907 omitted property statute. *Cf. Mastriano v. Board of Parole*, 342 Or 684, 693-95, 159 P3d 1151 (2007) (explaining that subsequent legislative amendments were consistent with and did not change earlier understanding of statute). The 1977 amendment took a different tack. It permits, in certain circumstances, assessors to include as omitted property the difference between the reported and the actual cost of certain property.

With that understanding of ORS 311.216 in mind, we turn to the specific property that the assessor sought to add to the assessment roll in this case. As noted, the assessor sought to add the value of site developments—grading, roads, sidewalks, storm drains, and the like—to the value of

the land listed on the assessment roll. By statute, land includes site developments, ORS 307.010(1)(a), and we infer from that statutory directive that the site developments are an integral part of the land. *See* OAR 150-307.010(2)(a)(A) (so stating). Indeed, it would be difficult to separate site developments, such as grading, roads, and storm drains, from the land of which they are a part.[15]

■ It follows that the site developments come within the general rule that we draw from the 1907 statute—that an integral part of property, which is listed on the assessment roll, does not qualify as omitted property. Moreover, the site developments do not come within any of the three exceptions to that rule, which the legislature enacted in 1951, 1971, and 1977. Indeed, the assessor does not argue that they do. It follows that the statutory premise of the assessor's argument fails; that is, the statutory phrase "in part" does not permit the assessor to add the value of an integral part of property (the site developments) to property (the land) already listed on the assessment roll. Given that conclusion, we have no occasion to consider whether the Department's rule is consistent, in all respects, with the governing statutes. It is sufficient to say that the property that the assessor sought to add as omitted property was an integral part of the land listed on the assessment roll that does not come within the definition of omitted property set out in ORS 311.216.

The judgment of the Tax Court is affirmed.

---

[15] As noted above, the assessor has not argued that the improvements to the land that the taxpayer made are not site developments within the meaning of ORS 307.010(1)(a). Similarly, the assessor has not argued that the site developments are not an integral part of the land. Rather, in the assessor's view, the fact that site developments may be an integral part of the land is no impediment to his ability to add the value of those site developments to the value of the land listed on the assessment roll.

# APPENDIX

## ORS 311.216 (2005) provides:

"(1) Whenever the assessor discovers or receives credible information, or if the assessor has reason to believe that any real or personal property, including property subject to assessment by the Department of Revenue, or any buildings, structures, improvements or timber on land previously assessed without the same, has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219.

"(2) Property or the excess cost of property, after adjustment to reflect real market value, shall be presumed to be omitted property subject to additional assessment as provided in ORS 311.216 to 311.232 whenever the assessor discovers or receives credible information:

"(a) That the addition of any building, structure, improvement, machinery or equipment was not reported in a return filed under ORS 308.285 or 308.290; or

"(b) That the cost as of January 1 of any building, structure, improvement, machinery or equipment reported in a return required by the assessor under ORS 308.285 or 308.290 exceeds the cost stated in the return.

"(3) If the tax collector discovers or receives credible information or if the tax collector has reason to believe that any property subject to taxation has been omitted from the tax roll, the tax collector shall immediately bring this to the attention of the assessor by written notice."