No. 104 February 19, 2026 159

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of

Al-Tajuan Jifunza Shujaa PETTY,
*Petitioner-Appellant,*
*and*

Rochelle Danielle Deidre PETTY,
*Respondent-Respondent.*

Washington County Circuit Court
17DR19361; A185721

Kelly D. Lemarr, Judge.

Argued and submitted November 10, 2025; on respondent's motion to dismiss filed November 17, 2025; and respondent's response filed November 19, 2025.

George W. Kelly argued the cause and filed the brief for appellant.

Christopher Fanning argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Order dated September 26, 2024, reversed.

**TOOKEY, P. J.**

Mother and father divorced in 2018. In this appeal, father seeks reversal of the trial court's post-judgment order awarding temporary custody and parenting time of their three children to mother. On July 31, 2024, based on mother's declaration that the children were in immediate danger, the trial court entered an *ex parte* order awarding temporary custody and parenting time to mother. After a hearing on August 27, 2024, the trial court continued the immediate danger order, granted mother emergency sole legal custody of the children, and allowed father parenting time.

On appeal, father challenges that order, which is dated September 26, 2024. He argues that the trial court erred in entering it because, although he relocated with the three children to Illinois, there was no evidence that he placed them in "immediate danger" as required for a temporary custody and parenting time order under ORS 107.139 (2023).[1] We agree with father that the trial court misapplied the "immediate danger" standard. We therefore reverse the order dated September 26, 2024, which awarded temporary custody and parenting time to mother.

## I.   FACTS

In the 2018 general judgment of dissolution, the trial court awarded custody of the parties' three children to father. In May 2023, the court modified the judgment to provide mother with some parenting time, including every other weekend during the school year and alternating weeks during summers. In May 2024, father suddenly relocated with the three children to Illinois, and he did not let mother contact the children. After a hearing on July 15, 2024, the court entered a status quo order requiring father to return the children to Oregon by July 22. The status quo order provided that if father failed to do so, then mother could move for temporary emergency custody, and it provided that the children should remain in Oregon until further order of the court.

---

[1] The statute was amended effective January 1, 2026. Or Laws 2025, ch 122, § 2. As explained below, the amendments are directly relevant to the issue we address in this appeal because they were intended to clarify the meaning of "immediate danger."

On or around July 21, father returned the children to Oregon, but, one week later, despite the court's order that the children remain in Oregon, father flew them back to Illinois for his week of parenting time. According to father, he intended to return the children to Oregon at the end of that week. On July 31, mother filed for emergency temporary custody of the children on the ground that father had placed them in "immediate danger," which the trial court granted.

At the hearing on August 27, 2024, mother acknowledged that she had no evidence that father abused the children or physically harmed them. However, based on its finding that father had violated the court's orders on multiple occasions, the trial court concluded that the children were in immediate danger. In its written order dated September 26, 2024, the trial court continued the immediate danger order and awarded emergency sole legal custody to mother. The court determined that the children were in immediate danger because father failed to comply with the court's orders, and he consistently put his own interests ahead of the best interests and welfare of his children.

About 10 months later, on July 9, 2025, the trial court entered a supplemental judgment modifying custody, parenting time, and child support, in which the court awarded sole legal and physical custody of the children to mother. Father appeals the temporary custody and parenting time order dated September 26, 2024.

## II.　ANALYSIS

A.　*Mootness*

Preliminarily, we consider mother's motion to dismiss the appeal. Mother argues that the appeal is moot because the July 2025 supplemental judgment "replaced the immediate danger order and the temporary relief contained therein." Father responds that the appeal is not moot because of the collateral consequences of the immediate danger order, including its potential impact on future custody, parenting time, or child support litigation, as well as on father's volunteer opportunities at his children's schools. *See R. M. v. McNeer*, 341 Or App 425, 430, 575 P3d 137, *rev den*, 374 Or 421 (2025) (determining

that the dismissal of a restraining order against the respondent did not moot the respondent's appeal "because of the collateral consequences identified by [the] respondent, including future custody and parenting-time litigation, as well as potential volunteer opportunities at his children's school").

On the issue of mootness, we agree with father. An appeal is generally considered moot if our decision will have no practical effect on the rights of the parties, including no legally cognizable collateral consequences of the ruling challenged on appeal. *Dept. of Human Services v. P. D.*, 368 Or 627, 631-32, 496 P3d 1029 (2021); *State v. K. J. B.*, 362 Or 777, 784-86, 416 P3d 291 (2018). Here, father identifies collateral consequences of the challenged ruling and mother "fails to prove that the identified consequences are either factually incorrect or legally insufficient." *P.D.*, 368 Or at 632. We therefore conclude that the appeal is not moot, and we deny mother's motion to dismiss.

B.   *The Meaning of "Immediate Danger"*

Turning to the merits, father argues that the trial court erred when it determined that his failure to follow court orders—including the status quo order requiring the children to remain in Oregon—placed the children in immediate danger. Father argues that "danger" means a threat of "serious loss or injury," and there was no evidence here of a threat to the children's safety. Mother responds that the trial court did not err when it determined that father's conduct, including moving the children to Illinois without providing reasonable notice to her, placed them in immediate danger.

The parties' arguments require us to construe the meaning of "immediate danger" as used in ORS 107.139 (2023). To answer that question, we apply the statutory interpretation framework articulated in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we seek to determine the legislature's intended meaning by examining the text of the statutory language in context, together with any legislative history that we find helpful to that inquiry. *Id.* at 171-72; *see also* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible.").

### 1.  *Text*

Starting with the text of the statute in effect at the time of the acts occurring in this case, the statute provided that a trial court could enter a temporary custody or parenting time order if it found that the child was in "immediate danger." ORS 107.139(1)(a)(A) (2023). There was no statutory definition of those terms. However, relevant dictionary definitions of "immediate" include "occurring, acting, or accomplished without loss of time," and "near to or related to the present." *Webster's Third New Int'l Dictionary* 1129 (unabridged ed 2002). Definitions of "danger" include "the state of being exposed to harm[,] *** injury, pain, or loss." *Id*. at 573. Putting those definitions together, the legislature likely intended that, in proceedings to modify child custody, before entering a temporary custody or parenting time order, the trial court was required to determine that a parent's conduct exposed the child or children to harm, injury, pain, or loss, at a time close to the present. *See Dept. of Human Services v. B. L. M.*, 331 Or App 295, 297, 545 P3d 1265 (2024) (explaining that an immediate-danger order "is intended to ensure a child's safety while custody modification proceedings are underway").

### 2.  *Context*

Turning from text to context, in a proceeding to modify a judgment that awards custody of a child, as well as seeking an immediate-danger order, a parent may also request a temporary status quo order, which restrains and enjoins each parent from:

"(a)   Changing the child's usual place of residence;

"(b)   Interfering with the present placement and daily schedule of the child;

"(c)   Hiding or secreting the child from the other parent;

"(d)   Interfering with the other parent's usual contact and parenting time with the child;

"(e)   Leaving the state with the child without the written permission of the other parent or the permission of the court; or

> "(f)   In any manner disturbing the current schedule and daily routine of the child until the motion for modification has been granted or denied."

ORS 107.138(2). The legislature's provision for a temporary status quo order to address changing a child's residence or leaving the state with a child suggests that the legislature likely had other or additional conduct in mind when it provided a different remedy for situations when the child was in "immediate danger."

We find additional contextual support for our interpretation of "immediate danger" in ORS 107.718, which is part of the Family Abuse and Prevention Act (FAPA). Generally, courts are prohibited from entering *ex parte* orders that modify parenting time or child custody arrangements. ORS 107.097(1). However, we note that courts may do so when the child is in "immediate danger" during a proceeding to modify custody or parenting time, ORS 107.139(1), and, under FAPA, when there is "a credible threat to the physical safety of the petitioner or the petitioner's child," ORS 107.718(1). Because those are both circumstances under which a court can enter an *ex parte* order modifying parenting or custody time, we think it likely that by "immediate danger," the legislature also intended to mean a threat to the child's safety.[2]

### 3.   *Legislative history*

Neither party provides legislative history materials shedding light on what the legislature intended when it originally enacted ORS 107.139(1)(a)(A) (2023). However, in 2025, the legislature amended the statute to expressly address the issue currently before us. The legislature added paragraph (b) to subsection (1) of ORS 107.139, which now provides:

> "When determining whether a child is in immediate danger for purposes of this section, the court shall consider whether, absent the temporary order, the child is at present risk of physical harm, severe psychological damage,

---

[2] Although not necessary for our discussion, we note that ORS 107.097(3)(a) also provides that a court may enter *ex parte* a temporary order providing for custody or parenting time with a child when the child is in "immediate danger." Our point here is simply that FAPA helps inform what the legislature likely meant by "immediate danger" in ORS 107.139(1).

> sex abuse, severe neglect significantly affecting the child's daily life or other similar harms. The court may not find that a child is in immediate danger for purposes of this section based solely on a parent's homelessness, illness, poverty or other similar circumstances."

Based on that amendment of the statute, it now contains a much clearer indication of what the legislature means by "immediate danger."

We recognize that the current version of the statute cannot be context for what the legislature intended "immediate danger" to mean in the prior version. *See Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997) (later-enacted statutes are not context for what the legislature intended an earlier-enacted statute to mean). But that does not mean that the later enactments are irrelevant. *Halperin v. Pitts*, 352 Or 482, 490, 287 P3d 1069 (2012). Indeed, "this court not infrequently refers to later-enacted statutes for the purpose of demonstrating consistency (or inconsistency) in word usage over time as indirect evidence of what the enacting legislature most likely intended." *Id.*; *see also Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 345, 245 P3d 81 (2010) (using later amendments to confirm the meaning of the original statute).

In the instant case, the legislative history materials associated with the 2025 amendments are relevant because they show that the amendments sought to clarify what the statute meant, not to alter or to change its meaning.

The proposed amendments to ORS 107.139 were part of House Bill (HB) 2613A (2025). At a public hearing before the Senate Committee on Judiciary, Representative Kim Wallan testified that the bill was "a simple bill" that sought "to define immediate danger using the same standard as the FAPA language." Video Recording, Senate Committee on Judiciary, HB 2613A, Apr 24, 2025, at 0:58:30 (comments of Rep Kim Wallen), https://olis.oregonlegislature.gov (accessed Feb 10, 2026). Sybill Hebb from the Oregon Law Center further explained that application of the "immediate danger" standard tended to vary "from case to case and county to county." Video Recording, Senate Committee on Judiciary, HB 2613A, Apr 24, 2025, at 1:00:10 (comments of

Sybill Hebb), https://olis.oregonlegislature.gov (accessed Feb 10, 2026). She pointed out that some counties tried to provide guidance on their websites, and that passage of the bill was not "changing the existence of this relief, just providing clarity about what the standard is for issuance of these orders." *Id.* at 1:01:20.

In written testimony in support of the bill, Hebb explained that the bill would "provide clarity and consistency to the current family law statutes." Testimony, Senate Committee on Judiciary, Apr 24, 2025 (statement of Oregon Law Center), https://olis.oregonlegislature/gov (accessed Feb 10, 2026). She identified the problem that the bill was drafted to address and the proposed solution:

> "**The problem:** Under current law, the term 'immediate danger' is not defined and lacks statutory criteria. The lack of clarity in the statutes regarding this standard has led to inconsistency between courts, and difficulty for parents seeking assistance in resolving safety concerns for their children.

> "**The solution:** HB 2613A will clarify what is meant by the 'immediate danger' standard in *** ORS 107.139(1) by providing a set of criteria by which a court may assess whether the standard has been met. The standard is designed to ensure that the criteria are serious enough to justify immediate intervention by the court while ensuring child safety as the focus. Specifically, the bill provides that when determining whether a child is in immediate danger sufficient to justify the entry of an immediate protective order, the court shall consider whether, absent the temporary order, the child is at present risk of:

> "• Physical harm;

> "• Severe psychological damage;

> "• Sex abuse;

> "• Severe neglect significantly affecting the child's daily life; or

> "• Other similar harms.

> "The bill provides that the court may not find that a child is in immediate danger based solely on a parent's homelessness, illness, poverty or other similar circumstances."

*Id.* (boldface in original). Hebb indicated that passage of the bill "does not create a new right or remedy in family law proceedings but will provide much needed clarity and consistency across the state regarding the use of current statutes authorizing emergency protective orders to prevent immediate damage to children." *Id.*

        In addition, a staff summary associated with the bill explained that the term "immediate danger" was not defined in the statute, but that the website for Linn County's Circuit Court provided guidance on the meaning of those terms in the instructions associated with its family law forms. The summary explained:

> "The term 'immediate danger' is undefined and lacks statutory criteria. While state law does not speak to the meaning of 'immediate danger,' Linn County has issued the below-copied guidance on this term.

> "*What is immediate danger? Immediate danger means that there is a clear and present risk that a child will be physically injured or neglected in such a way as to endanger the child. The 'risk' here is for physical injury. 'Immediate' means today. The evidence to support this finding must be truthful and credible. It must be based on the affiant's actual observations (person signing the affidavit is the affiant). The mere fact asserted that the other parent is abusing alcohol, abusing drugs, engaged in criminal behavior or has done these things in the past is usually not sufficient to show an immediate danger. The mere fact that a parent is ill, hospitalized, or homeless may not create an immediate danger depending on the age of the child and the overall circumstances. The court does not need a multipage history of every event that has occurred in the family. The court requires solid evidence that there is an immediate genuine risk of harm to the child—physical harm. Today.*"

Staff Measure Summary, HB 2613A, Mar 24, 2025, https://olis.oregonlegislature.gov (accessed Feb 10, 2026) (italics in original). That summary reflects Linn County's understanding of the term "immediate danger" prior to the proposed amendments. Although the instant case occurred in Washington County, which had no similar guidance on its website, the staff measure summary indicates that the 2025 amendments sought to ensure consistent statewide

application of the standard going forward. *See Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 503-04, 134 P3d 1065 (2006) (considering staff measure summaries as part of the analysis of the legislative history of a statute).

In our view, because the 2025 amendments did not change the statute with respect to the "immediate danger" standard and merely sought to provide clarity and consistency, we conclude that the legislature always intended for the terms to be understood in that manner, which is also consistent with our analysis of the text and context of the statute. Based on text and context, we conclude that "immediate danger" in ORS 107.139(1) (2023) meant a present risk of serious harm or injury to the child. The legislative history materials associated with the 2025 amendments to the statute confirm that interpretation.

C.   *Application*

Here, the trial court found that the children were in immediate danger because father failed to follow court orders and put his own interests ahead of the best interests of his children. But there was no evidence that father exposed the children to a present risk of serious harm or injury. As a result, we conclude that the trial court erred in determining that the children were in immediate danger. We therefore reverse the order dated September 26, 2024, which granted temporary custody and parenting time to mother. We offer no opinion regarding the effect, if any, of reversing that temporary order on the trial court's subsequent entry of a supplemental judgment modifying custody, parenting time, and child support.

Order dated September 26, 2024, reversed.