Submitted September 17, affirmed December 30, 2020, petition for review denied May 20, 2021 (368 Or 168)

Elise MOORE,
*Petitioner-Appellant,*

*v.*

CITY OF EUGENE,
an Oregon municipal corporation,
*Respondent-Respondent.*

Lane County Circuit Court
18CV53292; A171276

482 P3d 190

Petitioner sought to construct a 1,200 square foot residence on her property, but Eugene City Code (EC) 9.2751(18)(a)3 limited its square footage to 462 square feet. Petitioner filed this Measure 49 claim, ORS 195.300 to 195.336, with the City of Eugene, asserting that the dwelling size standard imposed by EC 9.2751(18)(a)3 reduced the fair market value of her property. Accordingly, she requested that the city either compensate her for the reduction of her property's value or, alternatively, that it waive EC 9.2751(18)(a)3 and allow her to build a 1,200 square foot residence. The City Council denied her request, concluding that her Measure 49 claim failed because EC 9.2751(18)(a)3 did not "restrict" her use of the property (*i.e.*, the code did not prohibit her from building a residence on the property). Upon a petition for a writ of review, the trial court upheld that decision. On appeal from that judgment, petitioner argues that, under Measure 49, she was entitled to compensation, or to a waiver of EC 9.2751(18)(a)3, because the city code "restricted" the use of her property. *Held*: The trial court did not err. The Court of Appeals construed Measure 49's use of the term "restrict." Based on that interpretation, the court concluded that a landowner may not pursue a Measure 49 claim merely because a land use regulation sets dwelling size standards.

Affirmed.

Debra E. Velure, Judge.

Bill Kloos and Law Office of Bill Kloos PC filed the briefs for appellant.

Lauren A. Sommers filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Brewer, Senior Judge.

BREWER, S. J.

Affirmed.

## BREWER, S. J.

The sole issue on appeal in this action for a writ of review of a local land use decision is the legal question whether a residential dwelling size standard in a City of Eugene zoning ordinance adopted after petitioner acquired her property restricts the residential use of petitioner's property as required to support her claim for just compensation under Measure 49. The trial court affirmed the decision of respondent the City of Eugene to apply the dwelling size standard to petitioner's development request. For the reasons explained below, we affirm the judgment of the trial court.

## STATUTORY FRAMEWORK

Before turning to the facts of this case, we provide a brief overview of the statutory framework in which it arises. ORS 195.300 to 195.336 govern claims against the State of Oregon and local governments for compensation or waiver of land use regulations that restrict the residential use and reduce the fair market value of private real property. Those claims are commonly referred to as "Measure 49 claims" in reference to the statewide ballot measure that the voters adopted in 2007. *See Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 224, 264 P3d 1265 (2011) (*Friends II*).

Another statewide ballot measure, Measure 37, preceded Measure 49 and

"provided landowners with 'just compensation' for land use regulations, enacted after they had acquired their property, that restricted the use of the property and, as a result, diminished its value. When faced with a claim for 'just compensation' under Measure 37, a government could choose: (1) to pay the landowner compensation for the diminished value of the property and enforce the regulation or (2) to waive the regulation and permit the owner 'to use the property for a use permitted at the time the owner acquired the property.'"

*Id.* (quoting *former* ORS 197.352(8) (2005), *renumbered as* ORS 195.305 (2007) (internal citations omitted)).

Measure 49 made two major changes to Oregon law. First, it modified Measure 37 to give landowners who filed Measure 37 claims "the right to build homes as compensation for land use regulations imposed after they acquired their properties, in lieu of the compensation or waiver of land use regulations previously required by Measure 37."[1] This opinion refers to those Measure 37 claims modified by Measure 49 as "retroactive" claims. Second, Measure 49 entitles a claimant to compensation or waiver of a land use regulation when a valid claim arises from a land use regulation enacted after January 1, 2007. ORS 195.310(1)(c). This opinion refers to those claims as "prospective" claims.[2] This case marks this court's first opportunity to consider the legal dimensions of a prospective claim under Measure 49.

The provisions of Measure 49 that govern prospective claims are codified at ORS 195.300 to 195.336.[3] A prospective claim—that is, a claim filed after the effective date of Measure 49 based on a land use regulation adopted after that date—must satisfy the following substantive requirements. First, the claimant must own the real property that is the subject of the claim. ORS 195.310(1)(a). Second, the challenged regulation must be a "land use regulation" (as that term is defined by Measure 49) that was enacted after January 1, 2007, and after the claimant acquired her property, but not more than five years before the date the claim was filed. ORS 195.300(14); ORS 195.305(3); ORS 195.310 (1)(c)-(d); ORS 195.312(5). Third, the claimant's desired use

---

[1] Official Voters' Pamphlet, Special Election, Nov 6, 2007, 19 (explanatory statement).

[2] When it was adopted, Measure 49 was entirely prospective in the sense "that it applies only to unvested Measure 37 waivers, Measure 37 claims that have not been reduced to a final decision, or new claims filed after the date of enactment of Measure 49." Edward J. Sullivan & Jennifer M. Bragar, *The Augean Stables: Measure 49 and the Herculean Task of Correcting an Improvident Initiative Measure in Oregon*, 46 Willamette L Rev 577, 589 (2010). With the passage of time, we nevertheless refer only to claims filed after the date of enactment of Measure 49 based on land use regulations adopted after that date as "prospective" claims.

[3] "The temporary parts of Measure 49 that pertain to previously filed [retroactive] Measure 37 claims (sections 5, 6, 7, 8, 9, 10, and 11) were not codified. See ORS 195.305 (explanatory note)." *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 153 n 3, 238 P3d 1016 (2010), *aff'd*, 351 Or 219, 264 P3d 1265 (2011) (*Friends I*).

of the property must be "a residential use or a farming or forest practice." ORS 195.310(1)(b). Fourth, the land use regulation must "restrict" the claimant's desired use of the property. ORS 195.300(14); ORS 195.305(1); ORS 195.310 (1)(c). Fifth, the land use regulation must cause a reduction in the fair market value of the property. ORS 195.310(1)(d). Sixth, the land use regulation must not fall within a statutory exemption. ORS 195.305(3); ORS 195.310(1)(d).

If a prospective Measure 49 claim is upheld, the government entity that enacted the land use regulation either must compensate the claimant for the reduction in fair market value or waive the land use regulation to the extent necessary to offset the reduction in fair market value. ORS 195.310(5).

## FACTS AND PROCEDURAL HISTORY

We state the undisputed facts as recited by the trial court and as supplemented by our own review of the record. The trial court found:

> "Petitioner acquired fee title to the Property on July 8, 2010 via Warranty Deed ***. Petitioner [desired to apply] to construct a 1200 square foot residence on the Property on April 9, 2018. The Property is a 4,260 square foot alley access lot classified as R-1, Low Density Residential Zone. Petitioner's claim seeks waiver of or compensation for the application of [Eugene City Code 9.2751(18)(a)3], effective August 29, 2014, to her desired use of the Property. Application of [Eugene City Code 9.2751(18)(a)3] limits the square footage of a residence she could construct on the Property to 10% of the total lot area. As applied, a residence on the Property would be limited to 462 square feet."

It is undisputed that petitioner is entitled to construct a single family residence on her property, but, as the trial court stated, under the challenged ordinance its maximum size would be 462 square feet, not the 1,200 square feet that petitioner sought.

Petitioner filed a Measure 49 claim with respondent, asserting that the dwelling size standard of EC 9.2751(18)(a)3 reduced the fair market value of her property by $25,000. Petitioner requested that respondent either compensate her for the reduction in fair market value or,

alternatively, waive EC 9.2751(18)(a)3 to allow her to build a 1,200 square foot residence on her property.

Respondent's City Council determined that petitioner's claim satisfied all but one of the requirements for a prospective claim, namely, the parallel requirement in ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c) that the regulation must restrict the claimant's desired—in this case, residential—use of the property. In that regard, the City Council concluded that

> "EC 9.2751(18)(a)3. does not restrict the residential use of Claimant's property because EC 9.2751(18)(a)3. does not restrict Claimant's ability to use her property for a single family residence, it simply limits the size of the single family residence Claimant may construct. Because Claimant retains the ability to construct a single family residence on her property both before and after the adoption of EC 9.2751(18)(a)3., the City Council finds that EC 9.2751 (18)(a)3. does not restrict Claimant's residential use of her property."

Based on that determination, respondent denied the claim.

Petitioner filed a petition for a writ of review of respondent's decision in the trial court, and the court upheld that decision. In a nutshell, the court concluded that the challenged ordinance is not a "land use regulation" because it does not *restrict* the residential use of private real property within the meaning of ORS 195.300(14)(c). The court concluded that, to give rise to a Measure 49 claim, an offending regulation actually must *prohibit* the residential use of private property that is zoned for residential use. In the court's view, respondent's ordinance does not prohibit the residential use of petitioner's property but, rather, is "merely an applicable standard governing the size of a dwelling."

In reaching that conclusion, the trial court considered as context section 11 of the Measure 49 statute, Oregon Laws 2007, chapter 424, one of the uncodified provisions that applies to retroactive claims:

> "Section 11, chapter 424, Oregon Laws 2007, sheds light on the legislature's intended meaning:
>
> "'[T]he establishment of a dwelling on property, authorized under sections 5 to 11 of this 2007 Act must comply

with all applicable standards governing the siting or development of the dwelling, * * * including, but not limited to, the location, design, construction or size of the dwelling, lot or parcel. However, the standards must not be applied in a manner that has the effect of prohibiting the establishment of the dwelling.'"

The court then referred to other provisions of law to conclude that "restrictions" already existed when Measure 49 was adopted, leading the court to further conclude that the voters therefore must have intended something else by the term "restrict" in Measure 49, namely, "prohibit." Because it was undisputed that the ordinance does not prohibit the construction of a residence on petitioner's property, the court entered a judgment affirming respondent's decision, and this appeal followed.

## ISSUE ON APPEAL

On appeal, petitioner asserts that the trial court erred in its statutory construction analysis. In petitioner's view, to trigger a prospective claim, a land use regulation need not "prohibit" all residential use of residentially zoned private property. According to petitioner, the meaning of "restrict" is broader than that, and it includes the kind of development standard at issue here. Because the term is not defined by statute, petitioner relies on dictionary definitions of "restrict": "1: to set bounds or limits to: hold within bounds[,]" *Webster's Third New Int'l Dictionary* 1937 (unabridged ed 2002), and "prohibit": "1: to forbid by authority or command[,]" *id.* at 1813, to show that the terms have different meanings. Petitioner asserts that "[t]he regulation at issue here restricted the potential residential use because it reduced or limited the size of the home that can be built on the site." Petitioner further asserts that the trial court erred in relying on section 11 of Measure 49 as context for its analysis because, by its terms, that provision applies only to retroactive claims.

In response, respondent does not endorse the trial court's analysis of the pertinent statutes, but it nevertheless contends that petitioner's claim must fail. Respondent asserts that petitioner's claim does not satisfy the parallel statutory requirements that (1) the challenged ordinance

must be a "land use regulation" under ORS 195.300(14)(c), which requires that the ordinance "restrict the residential use" of her private real property zoned for residential use; (2) the ordinance must "restrict the residential use of private real property" to authorize a claim for "just compensation" under ORS 195.305(1); and (3) petitioner's "desired use of the property is restricted by one or more land use regulations" enacted after January 1, 2007. ORS 195.310 (1)(c). Respondent asserts that its City Council correctly determined that petitioner failed to satisfy those requirements because EC 9.2751(18)(a)3 does not restrict the residential use of her property.

## STANDARD OF REVIEW

In an appeal from a writ of review judgment where the parties' arguments raise only questions of law, as they do here, we review for errors of law. *See Friends II*, 351 Or at 244 (explaining standard of review on appeal of writ of review from Measure 49 vested rights determination); ORS 34.040(1)(d) (in writ-of-review proceeding, trial court must determine, among other things, whether county "[i]mproperly construed the applicable law"). When the meaning of a statute is at issue, our task is to discern the intention of the legislature or, in the case of ballot measures, the voters, by examining the text, context, and any pertinent enactment history of the statute. *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 166, 238 P3d 1016 (2010), *aff'd*, 351 Or 219, 264 P3d 1265 (2011) (*Friends I*) (citing *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009)). In performing that task, the court is responsible for identifying the correct interpretation, regardless of whether it has been identified by the parties. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997); *Oregon Shores v. Board of County Commissioners*, 297 Or App 269, 275, 441 P3d 647 (2019).

## ANALYSIS

With that background, we now describe the governing statutory framework in greater detail. A "land use regulation" is defined by Measure 49 to include a "provision of a city comprehensive plan, zoning ordinance or land division ordinance that *restricts the residential use* of private

real property zoned for residential use." ORS 195.300(14)(c) (emphasis added). ORS 195.305 provides, in part:

"(1)   If a public entity enacts one or more land use regulations that *restrict the residential use* of private real property or a farming or forest practice and that reduce the fair market value of the property, then the owner of the property shall be entitled to just compensation from the public entity that enacted the land use regulation or regulations as provided in ORS 195.310 to 195.314.

"*****

"(3)   Subsection (1) of this section shall not apply to land use regulations that were enacted prior to the claimant's acquisition date or to land use regulations:

"(a)   That *restrict or prohibit activities* commonly and historically recognized as public nuisances under common law;

"(b)   That *restrict or prohibit activities* for the protection of public health and safety;

"(c)   To the extent the land use regulations are required to comply with federal law;

"(d)   That *restrict or prohibit the use of a property* for the purpose of selling pornography or performing nude dancing[.]"

(Emphases added.)

ORS 195.310, in turn, provides, in part:

"(1)   A person may file a claim for just compensation under ORS 195.305 and 195.310 to 195.314 after June 28, 2007, if:

"(a)   The person is an owner of the property and all owners of the property have consented in writing to the filing of the claim;

"(b)   The person's *desired use of the property is a residential use* or a farming or forest practice;

"(c)   The person's *desired use of the property is restricted* by one or more land use regulations enacted after January 1, 2007; and

> "(d)   The enactment of one or more land use regulations after January 1, 2007, other than land use regulations described in ORS 195.305 (3), has reduced the fair market value of the property."

(Emphases added.)

Measure 49 does not include definitions of "restrict" or "use," and the meaning of those terms is not apparent on the face of the statutes at issue. In the absence of statutory definitions, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). It is appropriate to examine, in addition to other sources, dictionary meanings to ascertain the meaning of such words. *Jaqua v. City of Springfield*, 193 Or App 573, 587, 91 P3d 817 (2004). As noted, petitioner's primary focus is on the meaning of the term "restrict." The dictionary definition on which petitioner relies is one ordinary meaning of "restrict." *See* 308 Or App at 323. Petitioner might well have cited another dictionary definition of "restrict" as "2: to place [land] under restrictions as to use [as by zoning ordinances.]" *Webster's* at 1937. Because "restrict" is a word of common usage, both of those meanings potentially are informative.

As pertinent context, petitioner observes that, in ORS 195.305(3)(a), (b), and (d), the voters employed the term "prohibit" disjunctively to "restrict" in setting out exemptions under Measure 49, whereas the provision at issue here contains the term "restrict" but not "prohibit." Petitioner relies on the principle that, when a statute uses two different terms, they are presumed to have distinct meanings. ORS 174.010; *Dept. of Transportation v. Stallcup*, 341 Or 93, 103, 138 P3d 9 (2006).

As additional context, petitioner relies on the legislative policy findings in ORS 195.301, which provides, in part:

> "(1)   The Legislative Assembly finds that:

> "(a)   In some situations, land use regulations unfairly burden particular property owners.

> "(b)   To address these situations, it is necessary to amend Oregon's land use statutes to provide just compensation for unfair burdens caused by land use regulations.

"(2)   The purpose of ORS 195.305 to 195.336 and sections 5 to 11, chapter 424, Oregon Laws 2007, sections 2 to 9 and 17, chapter 855, Oregon Laws 2009, and sections 2 to 7, chapter 8, Oregon Laws 2010, and the amendments to Ballot Measure 37 (2004) is to modify Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources."

As petitioner sees it,

"[t]he theme in this policy statement is 'just compensation for unfair burdens.' This policy is more consistent with restriction of housing rights, meaning limiting what can be developed, than it is with prohibiting any housing development ***. The Oregon legislature adopted a statute that afforded protection against 'unfair burdens' at a level less than the deprivation of all development rights and used plain language—restricts—that does so."

As far as it goes, petitioner's argument has some force insofar as it focuses on the ordinary meaning of "restrict." However, as employed in each of the pertinent statutes, "restrict" is part of a phrase that includes the term "use." More specifically, ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c) uniformly employ as verbs the terms "restricts," "restrict," and "restricted" with reference to the noun "use," whether as a residential, farming, or forest use of private property.

As noted, Measure 49 does not define "use." However, this court recently considered the meaning of "use" as part of a phrase in the disposition of a retroactive claim under Measure 49. In *Friends of Yamhill County v. Board of Commissioners*, 298 Or App 241, 446 P3d 548, *rev den*, 365 Or 769 (2019) (*Biggerstaff II*), we held that a retroactive claim did not satisfy section 5(3)[4] of Measure 49

---

[4]  Section 5(3) of Measure 49 states:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly is entitled to just compensation as provided in:

"*****

"(3) A waiver issued before the effective date of this 2007 Act to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

because the claimants' plan when Measure 49 took effect was to subdivide their property and sell buildable lots. The court explained that the relief allowed under section 5(3) of Measure 49 is no broader than the relief to which a claimant was entitled under a Measure 37 waiver, and the claimant's Measure 37 waivers did not allow them to sell buildable lots. *Id*. at 258.

As part of our analysis in *Biggerstaff II*, we concluded that the claimants' planned subdivision was not a "use" under Measure 37 that became nonconforming when the claimants sold lots. *Id*. at 254. We elaborated:

"[A] Measure 37 waiver allowed the present owner to 'use the property for a use permitted at the time when the owner acquired the property.' *Former* ORS 197.352(8) (2005). In [*Friends I*], we interpreted 'the use of the property' as that phrase is used in section 5(3) of Measure 49. We concluded that a residential 'use' in that context meant 'the actual employment of land for a residential purpose.' We explained as follows:

"'Among its numerous definitions, "use" is generally defined to mean "to put into action or service: have recourse to or enjoyment of: EMPLOY." *Webster's Third New Int'l Dictionary* 2523 (unabridged ed 2002). Analogously, "farm use" is defined by ORS 215.203(2) (a), for purposes of statutes regulating zoning of agricultural lands, as "the current employment of land for the primary purpose of obtaining a profit in money by [various agricultural activities]." Zoning laws typically define allowed land "uses" by referencing particular activities on land or structural improvements to land. *See, e.g.*, ORS 215.213 and ORS 215.283 (listing of "uses" allowed in exclusive farm use zones as including certain types of structures (*e.g.*, "public or private schools," "churches," and "dwellings") and "operations" or activities on land (*e.g.*, "operations for the exploration for minerals" and "creation, restoration or enhancement of wetlands")); ORS 215.441 and ORS 227.500 (regulating "use of *** real property for activities customarily associated with" places of worship). Thus, the plain meaning of the text confirms, as the reviewing court concluded, that "use of the property" means the actual employment of land for a residential purpose.'"

*Id*. (brackets in *Biggerstaff II*).

Based on our construction of "use" in *Friends I*, we concluded in *Biggerstaff II* that

"a 'use,' as that term appears in the phrase 'a use permitted at the time the owner acquired the property' in subsection 8 of Measure 37 likewise means actual employment of the land for a particular purpose—here, residential. As set out above, in *Friends I*, we explained that 'use' has an established meaning in the context of land use law, and that the voters intended to give the word that meaning in section 5(3) of Measure 49. For similar reasons, we reach the same conclusion with respect to the meaning of 'use' in 'a use permitted at the time the owner acquired the property' in subsection 8 of Measure 37: The measure is drafted as a land-use statute, and, by employing 'use' as a noun, it demonstrates voters' intent to adopt a standard land-use meaning: actual employment of the land for a particular purpose. *Thus, a residential 'use' is a house, not just a subdivision of land*.

"Accordingly, pursuant to a Measure 37 waiver, the present owner could 'use the property for a use permitted at the time the owner acquired the property' by subdividing the land and building a house on the new lot. However, a subdivision of land, without houses, is not a use permitted at the time the owner acquired the property because it is not a 'use.'"

*Id.* at 254-55 (internal citations omitted; emphasis added).

Although we construe "use" here in a prospective claim under Measure 49, the statutory phrasing indicates that the same standard land-use meaning—actual employment of the land for, as pertinent here, a residential purpose—probably was intended by the voters in the statutes at issue here. Like the text that we considered in *Biggerstaff II*, ORS 197.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c) employ "use" as a noun. The same breadth in purpose applies to farming and forest "use" under those statutes. It is apparent from that structure that the voters' focus was on relatively broad categorical levels of use. That is, in the words of *Biggerstaff II*, a residential use is a "house," not, as pertinent here, the standards for siting and developing the house. That understanding suggests that, to "restrict" residential use, a land use regulation adopted after an owner acquired her property must limit the owner's preexisting

legal right to use the property for a residential purpose, not merely alter applicable siting and development standards.

Of course, we do not interpret statutory terms and phrases in isolation. Instead, we construe them in their overall context, including related statutory provisions. *See, e.g.*, *Eugene Water and Electric Board v. PERB*, 365 Or 59, 70, 442 P3d 596 (2019) (citing *PGE*, 317 Or at 611). Petitioner is right to focus as part of that context on the interplay between the terms "restrict" and "prohibit" in ORS 195.305(3). However, that interplay is more nuanced than petitioner suggests. Notably, the word "prohibit" does not appear in ORS 195.300(14), nor is it found in ORS 195.305(1) or ORS 195.310. Rather, it only appears in three of the exemptions to a prospective claim found in ORS 195.305(3). That circumstance is significant, because it is implausible to infer that the voters meant to authorize a prospective claim under ORS 195.305(1) and ORS 195.310(1)(c) where a land use regulation *restricts* the residential use of private property in the sense for which petitioner advocates, but not where the regulation actually *prohibits* residential use of the property. Thus, the structure of the statutory scheme indicates that "restrict" in ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c) includes the prohibition of a claimant's residential use of his or her property. To be clear, that understanding doesn't necessarily mean, as the trial court concluded, that "restrict" is *equivalent to* "prohibit." However, it does undermine petitioner's argument that the words have exclusive meanings.

We further observe that both the phrasing and substantive focus of ORS 195.305(3)—which sets out exemptions to prospective claims—are materially different from that of ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c). Unlike the latter three provisions, two of the three statutory exemptions on which petitioner relies do not employ the word "use," but rather refer to "activities" that in broad terms impair public safety and welfare. *See* ORS 195.305 (3)(a), (b). The third exemption, paragraph (3)(d), does employ "use," but the substantive focus of that provision is of a piece with the focus of the other two, as it pertains to land use regulations that "restrict or prohibit the use of property

for the purpose of selling pornography or performing nude dancing." With that evident public welfare concern in mind, it makes sense that the voters would clarify—even if out of an abundance of caution—that Measure 49 does not authorize compensation for claims based on land use laws that regulate to any extent the array of conduct described in ORS 195.305(3)(a), (b), and (d). As a consequence, the use of the disjunctive "restrict or prohibit" in ORS 195.305(3) is less telling than petitioner suggests.

The parties refer us to other provisions of Measure 49 to support their differing views, but we do not find those provisions to be especially helpful here. As noted above, petitioner argues that "[r]eading the Measure 49 threshold for a regulation that 'restricts' residential use to mean a regulation that 'prohibits' residential use would be inconsistent with the stated purpose of Measure 49" in ORS 195.301, which provides "just compensation for unfair burdens." However, ORS 195.301 does not tell us whether the voters considered a dwelling size standard such as the one at issue here to be an unfair burden. Moreover, as elaborated below, in section 11 the voters subjected retroactive claims to current—not historical—dwelling size standards, so they must not have regarded a change in such standards as an unfair burden in that setting, which was the major focus of Measure 49.[5] In short, we do not agree that ORS 195.301 bears the contextual weight that petitioner urges.

---

[5] The measure was enacted as House Bill (HB) 3540 (2007) and referred to the voters on June 15, 2007. Or Laws 2007, ch 424. The ballot title and explanatory statement for Measure 49 primarily focused on retroactive claims. The ballot title included just one sentence concerning prospective claims: "Authorizes future claims based on regulations that restrict residential uses of property or farm, forest practices." Voters' Pamphlet at 7. The explanatory statement for Measure 49 only had this to say about prospective claims:

"This measure modifies Measure 37 for compensation claims that arise from land use regulations in the future. It authorizes such claims based on regulations that limit residential uses of property or farm or forest practices, requires documentation of reduced values and provides for proportionate compensation when such reductions in value occur. Property owners will have five years to file claims over regulations enacted after January 1, 2007."

*Id.* at 19.

Finally, the voters' pamphlet's arguments in favor of and in opposition to Measure 49 focused almost entirely on Measure 49's treatment of retroactive claims and do not bear on the issue at hand.

In addition, petitioner points out that ORS 195.310 (1)(b) and (c) refer to a claimant's "*desired* use" of his or her property, which petitioner describes in very specific terms, that is, a desire to build a 1,200 square foot home. However, section (1)(b) describes the requisite "desired use" in different terms, that is, as "a residential use or a farming or forest practice[.]" That phrasing is consistent with the employment of "use" as a term of art that refers to the categorical employment of land for a residential, farming, or forestry purpose.

As noted, the trial court did not confine its contextual analysis to provisions and arguments that the parties discussed and advanced. Among other provisions, the court *sua sponte* considered ORS 195.300(14)(b), which defines "land use regulation" to include "[a] provision in ORS 227.030 to 227.300, 227.350, 227.400, 227.450 or 227.500 or in ORS chapter 215 that restricts the residential use of private real property." Many of the statutory provisions referred to in paragraph (14)(b) have no obvious relationship to restrictions on the residential use of property, but, depending on the meaning of the phrase "restricts the residential use," some might be so construed. In particular, ORS 227.290(1) provides, in part:

> "The council or other governing body of any incorporated city, under an exercise of its police powers, may establish or alter building setback lines on private property adjacent to any alley, street, avenue, boulevard, highway or other public way in such city. It may make it unlawful and provide a penalty for erecting after said establishment any building or structure closer to the street line than such setback line, except as may be expressly provided by ordinance."

The trial court concluded that the reference in ORS 195.300(14)(b) to a swath of statutes that includes ORS 227.290 shows that "a 'land use regulation' is already a restriction on use and that only a prohibition of use gives rise to the restriction contained in the Measure 49 definition of 'land use regulation.'" At first blush, we might draw a different inference from ORS 195.300(14)(b), namely that the voters regarded setback standards authorized under ORS 227.290 as "land use regulations," which might suggest that the imposition of more stringent setback standards would restrict the residential use of private property zoned

for residential use. If so, a dwelling size standard such as the one enacted after petitioner acquired her property also arguably might restrict the residential use of that property under Measure 49.

There are two problems with such an inference, though. First, ORS 195.300(14)(b) does not specifically refer to ORS 227.290 as a provision that restricts the residential use of property. Instead, the phrasing of ORS 195.300 (14)(b)—"[a] provision in ORS 227.030 to 227.300, 227.350, 227.400, 227.450 or 227.500 or in ORS chapter 215 that restricts the residential use of private real property"— indicates that the voters did not necessarily understand that all those provisions restrict the residential use of private real property. More importantly, though, ORS 195.300 (14)(b) is concerned with *statutes* that restrict the residential use of property, not *local government regulations* that such statutes might authorize. Although ORS 227.290 authorizes local governments to adopt setback standards, it does not impose such standards. Moreover, ORS 227.290 was enacted before petitioner acquired her property, and it has not been amended thereafter.[6] Thus, it does not assist petitioner's prospective claim.

The trial court's reliance on section 11 of Measure 49 merits more extended discussion.[7] That provision states that "the establishment of a dwelling on property, authorized under sections 5 to 11 of this 2007 Act must comply with all applicable standards governing the siting or development of the dwelling, lot or parcel including, but not limited to, the location, design, construction or *size of the dwelling*, lot or parcel." (Emphasis added.) Under our case law, if that provision governed prospective claims under Measure 49, the answer in this case would be clear cut: The challenged ordinance would not restrict the residential use of petitioner's property. *See Bertsch v. DLCD*, 252 Or App 319, 330, 287 P3d 1162 (2012) (concluding that "'all applicable standards' [under section 11] are those standards that *currently* apply

---

[6] ORS 227.290 has been amended twice. See Or Laws 1979, ch 671, § 4; Or Laws 1981, ch 590, § 9.

[7] Neither party has addressed section 11 in any detail. As noted, petitioner deems it inapplicable because it expressly applies only to retroactive claims, whereas respondent has ignored it altogether.

to the establishment of a dwelling, not historical standards"
(emphasis in original)). However, as discussed, by its terms,
section 11 only applies to retroactive Measure 49 claims. So,
what do we make of the fact that no parallel provision was
codified for prospective claims?

On one hand, we might be tempted to infer that the
omission was deliberate and that, by negative implication,
"restricts the residential use" in a prospective claim was
meant to include development standards governing the size
of a dwelling. Such an inference would invoke the statutory
construction guide of *expressio unius est exclusio alterius*.
Under that guide, generally speaking, "when the legislature
includes an express provision in one statute and omits the
provision from another related statute, we assume that the
omission was deliberate." *State v. Bailey*, 346 Or 551, 562,
213 P3d 1240 (2009).

However, "[t]he *expressio unius* principle is simply
one of inference. And the strength of the inference will
depend on the circumstances." *Crimson Trace Corp. v. Davis
Wright Tremaine LLP*, 355 Or 476, 497, 232 P3d 980 (2014).
*See also Colby v. Gunson*, 224 Or App 666, 671, 199 P3d
350 (2008) ("[T]he *expressio unius* guide to legislative intent
corroborates, rather than supplies, meaning to a statute.").
Applying that guide here would distort the unified claim
requirements of Measure 49, because the same definition
of "land use regulation" applies both to retroactive and pro-
spective claims involving city zoning ordinances.[8] That is,
regardless of claim type, a "provision of a city comprehen-
sive plan, zoning ordinance or land division ordinance" must
"restrict[] the residential use of private real property zoned
for residential use" to qualify as a land use regulation. ORS
195.300(14)(c). Stated differently, regardless of claim type, a
city zoning ordinance either "restricts the residential use"
of private real property or it does not. By definition, it is
not a chameleon. Thus, it is most plausible to infer that the
voters merely took pains in section 11 to clarify that cur-
rent siting and development standards apply to retroactive

_____

    [8] ORS 195.300 provides that its definitions, including the definition of "land
use regulation" in subsection (14), apply both to claims under "[ORS] 195.305 to
195.336 [prospective claims] and sections 5 to 11, chapter 424, Oregon Laws 2007
[retroactive claims]."

claims, but that they did not mean thereby to imply that the application of current siting and development standards would restrict the residential use of property in a prospective claim. Accordingly, we decline to apply the *expressio unius* guide here.

    In sum, based on our analysis of the text of ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c) in their pertinent context, we do not agree with petitioner that the dwelling size standard in respondent's ordinance restricts the residential use of her property within the meaning of Measure 49.[9] Part of the difficulty lies in petitioner's focus on the difference in ordinary meaning of the words "restrict" and "prohibit" that appear disjunctively in three exemptions under ORS 195.305(3). As petitioner frames the analysis, that difference would mean that virtually any siting or development standard would "restrict the residential use" of private property that is zoned for residential use and, thus, trigger a right to just compensation where the other statutory requirements for a prospective claim are satisfied. However, in our view petitioner's analysis does not comport with the meaning of "use" in ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310(1)(c), nor does it comport with the nuanced interplay between the terms "restrict" and "prohibit" in ORS 195.305(3)(a), (b), and (d).

## CONCLUSION

    Considering the pertinent statutory text in context, we conclude that the term "restrict," as it is employed in ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310 (1)(c) modifies the noun "use," and therefore it must be interpreted as part of a phrase in harmony with the meaning of "use." In the standard land use context and in the specific context of the provisions at issue here, "use" is a term of legal art that refers to the actual employment of land for a categorical purpose, whether a residential, farm, or forestry purpose, not the details of siting and development standards. It follows that, to "restrict" residential use within the meaning of those provisions, a land use regulation adopted after an owner acquired her property must limit the owner's

___

[9] We agree with the parties that the enactment history of Measure 49 does not meaningfully bear on the issue in this case.

preexisting legal right to use her residentially zoned private property for a residential purpose, not merely alter applicable siting and developments standards.[10] Viewed accordingly, the dwelling size standard in respondent's ordinance does not restrict the residential use of petitioner's property, and the trial court did not err in entering judgment for respondent.

In so concluding, we need not decide every conceivable application of the phrase "restricts the residential use" in ORS 195.300(14)(c), ORS 195.305(1), and ORS 195.310 (1)(c). In particular, we do not adopt the trial court's conclusion that the meaning of "restrict" in those provisions necessarily is equivalent to "prohibit." To reiterate, our observation that the former term subsumes the latter in those provisions does not necessarily compel the conclusion that the terms have an identical meaning.[11] We leave that issue for another day.

Affirmed.

---

[10] This case does not present the question whether a change in siting or development regime that is so onerous or burdensome as to effectively foreclose a claimant's preexisting legal right to use her residentially zoned property for a residential purpose would entitle her to just compensation under Measure 49. This opinion should not be understood to reach that issue.

[11] It is not difficult to conceive of a land use regulation that arguably would "restrict the residential use" of private property zoned for residential use without prohibiting its residential use altogether. Consider the example of a regulation that reduces the number of dwellings that can be built on property that is zoned for residential use, but does not prohibit all residential use. That circumstance is not presented here, and we therefore do not reach it.