John E. STROM, Jr. (Trustee),
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

MULTNOMAH COUNTY,
a political subdivision of the
State of Oregon,
*Intervenor-Defendant.*

(TC 4493)

Trial was held January 18, 2001, in the Pioneer Courthouse, Portland.

John E. Strom, Jr., Plaintiff (taxpayer), argued the cause *pro se.*

Wendy Sanderson, Assistant Attorney General, Department of Justice, Salem, filed an Answer for Defendant (the department) but did not appear at trial.

John S. Thomas, Assistant County Counsel, Multnomah County, argued the cause for Intervenor (the county).

Decision for Defendant and Intervenor rendered February 22, 2001.

## CARL N. BYERS, Judge.

Plaintiff (taxpayer) appeals the January 1, 1999, assessed value of property located on Main Street in Gresham. Taxpayer's appeal raises issues with regard to the real market value (RMV), the exception value, and omitted property. Multnomah County intervened and defended its assessment. Trial was held January 18, 2001, in the Pioneer Courthouse, Portland.

## FACTS

The subject property consists of a level .27 acre lot, improved by a 1,024 square-foot, three-bedroom, one-bath residence. The front portion of the house was constructed in 1896. The rear portion of the house was added sometime in the 1920s. For many years, the house was used as a rental property and deteriorated in condition and appearance.

In 1997 and 1998, taxpayer worked to repair and improve the property. As with many remodeling projects, building codes and other circumstances required him to do more extensive work than originally anticipated. Taxpayer removed the outside siding, interior walls in the front portion of the house, roof, windows, doors, and kitchen cabinetry and replaced them with all new materials. The house was entirely rewired for electricity, replumbed for water, and insulation was installed throughout. Taxpayer was required to enlarge all the doorways as well as build a ramp and new porch in order to become ADA compliant. Taxpayer installed a new bathroom floor, toilet, sink, and reconditioned the tub. In addition to new kitchen cabinets, taxpayer installed a new sink, tile countertops, and flooring. Taxpayer also replaced the front concrete walk and installed a new driveway.

## ISSUES

The issues raised by taxpayer's appeal are: (1) was the land properly added back as omitted property? (2) did

taxpayer's repair and remodeling work constitute an "exception" that allows an increase in maximum assessed value (MAV)? and (3) what was the property's RMV as of January 1, 1999?

## ANALYSIS

### Omitted Property

Taxpayer's property tax statement for 1999-2000 failed to include the value of the land. The land value for the prior year was $72,400. By letter dated January 10, 2000, the assessor notified taxpayer that it had discovered the omission and intended to correct the roll. By subsequent letter dated February 23, 2000, the assessor indicated that the correction had been made by adding the land value of $76,000 to the tax roll, and additional taxes due of $742.51 would appear on taxpayer's 2000-01 tax statement.

■ Taxpayer complains that if the assessor makes an error, taxpayer should not have to pay for it. However, the legislature has recognized that with many thousands of property tax accounts, it is likely that some errors will occur. The legislature has determined that inadvertent errors by the assessor should not excuse taxpayers from their obligation of paying their fair share of taxes. Accordingly, ORS 311.205[1] allows the assessor to correct errors such as omitted property. Based on the evidence submitted, the court finds that the assessor complied with the statutes, and the land value was correctly added to the roll.

### Exception Value

■ Consistent with Article XI, section 11, of the Oregon Constitution, a property's MAV cannot be increased except for certain enumerated exceptions. One of those exceptions is where the property is "new property or new improvements to property." *See* ORS 308.146(3)(a). The legislature has adopted definitions in ORS 308.149, which state, in part:

"(5)(a) 'New property or new improvements' means changes in the value of property as the result of:

---

[1] All references to Oregon Revised Statutes are to 1997.

"(A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property;

"* * * * *

"(b) 'New property or new improvements' does not include changes in the value of the property as a result of:

"(A) General ongoing maintenance and repair; or

"(B) Minor construction.

"* * * * *

"(6) 'Minor construction' means additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years."

The Department of Revenue has adopted administrative rules refining those definitions. OAR 150-308.149-(A)(1) states, in part:

"(b) 'Reconstruction' means to rebuild or replace an existing structure with one of comparable utility.

"(c) 'Major addition' means an addition that has a real market value over $10,000 and adds square footage to an existing structure.

"(d) 'Remodeling' means a type of renovation that changes the basic plan, form or style of the property.

"(e) 'Renovation' means the process by which older structures or historic buildings are modernized, remodeled or restored.

"(f) 'Rehabilitation' means to restore to a former condition without changing the basic plan, form or style of the structure.

"(2)(a) For purposes of ORS 308.149 'general ongoing maintenance and repair' means activity that:

"(A) Preserve the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;

"(B)  Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;

"(C)  Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and

"(D)  For income producing properties is part of a regularly scheduled maintenance program.

"(b)  Regardless of cost, the value of general ongoing maintenance and repairs may not be included as additions for the calculation of maximum assessed value."

In considering the work done on the subject property, it is clear that taxpayer did not rebuild or replace an existing structure or make a major addition that added square footage. However, some of the work performed clearly qualifies as remodeling. Such work would include changing the sizes of the doorways, creating new closets, installing doors on closets, and installing new kitchen cabinets and counters.

Most of the work constitutes renovation. Removal of the lath and plaster walls in the front portion and installing insulation and new sheetrock, windows, doors, roof, plumbing, wiring, kitchen and bath fixtures, molding, porch and ramp, flooring, light fixtures, concrete, siding and gutters all constitute renovation.

Taxpayer contends that most of the work done was "general ongoing maintenance and repairs." The court disagrees. In performing the work, taxpayer did not preserve the existing improvements without significantly changing the materials. Much of the existing materials were removed, discarded, and replaced with new materials. Therefore, the court finds that the work performed is not general ongoing-maintenance repairs but work that constituted remodeling, renovation, and rehabilitation.

Did the work constitute only "minor construction" in that it added less than $10,000 of value per year for each of the two years? It should be noted that the test is not the cost of the work but whether the work increases the RMV $10,000

or more in any assessment year or $25,000 for cumulative additions made over five assessment years.

Again, most of the evidence was submitted by taxpayer. Taxpayer submitted receipts for materials and labor that he contracted out totaling $10,167 for 1997 and $6,053 for 1998. However, the court is unable to find receipts for many costs such as for roofing materials, siding, and other items. In addition, taxpayer testified that he has a degree in construction and is also experienced. Taxpayer worked on the property for approximately two to three days per week for eight to nine months. He spent additional time acting as general contractor, *e.g.*, ordering and picking-up materials and arranging for and supervising subcontractors. Taxpayer provided no estimate for the value of his labor. However, intuitively, it must have been significant. The value of that labor is reflected in the quality of the work done, which is professional and of high quality.

The county increased the assessed value of the improvements from $21,700 in 1997 to $62,000 in 1999. A county appraiser, Bob Alcantara, testified that the county did not change the cost factor but reduced the depreciation allowed from 77 percent to 20 percent, resulting in an exception value of $38,800.

Based on all the evidence submitted, the court finds that the work performed by taxpayer and those he hired added more than $10,000 of value in each of the two years involved. Therefore, the renovation work done constitutes an exception to MAV.

*Real Market Value*

Taxpayer contends that the RMV of the property as of January 1, 1999, was not more than $100,000. As evidence of the RMV, taxpayer testified that prior to renovating the property, he needed additional funds. He obtained money from a friend named Tim Ramis in exchange for a 25 percent interest in the property. After completing the renovation, taxpayer repurchased the 25 percent interest for $25,000. Taxpayer reasons that $25,000 for 25 percent indicates the property had a value of not more than $100,000.

The county's evidence showed that after completing renovation of the property, taxpayer advertised it for sale for

$299,950. Taxpayer sold the property on August 24, 2000, for $285,000. In addition, the county had three comparable sales that indicated a range of $148,500 to $161,100. In response, taxpayer contends that the county's assessment is too high because it results in a per-square-foot cost for both land and improvements that is higher than the assessments of neighboring properties. Also, taxpayer contends that a new zoning policy of the city positively impacted the value of the property.

The valuation evidence from both sides is meager. The court cannot accept taxpayer's point-of-view that the property as of the assessment date had a RMV of only $100,000. The Ramis sale of a 25 percent interest is not indicative of market value because the property was not advertised on the open market and exposed to the competitive bidding process that takes place in the open market. Further, if the property was only worth $100,000 and the land value was $75,000, that would leave only $25,000 for the newly renovated improvements. That is both unreasonable and unlikely. In fact, it appears that the RMV could be higher than the $138,000 determined by the assessor. An assessed value of $62,000 for the improvements represents only $60.55 per square foot. However, the court finds it has too many questions regarding the market and comparable sales to make that adjustment. Accordingly, the court finds that it must sustain the RMV of $138,000 as of January 1, 1999. Judgment will be entered consistent with this Opinion. Costs to neither party.