IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

NATASHA K. DUNNE,                          )
                                           )
              Plaintiff,                    )   **TC 5440**
         v.                                 )
                                           )
DEPARTMENT OF REVENUE,                      )
State of Oregon,                            )
                                           )
              Defendant,                    )   **ORDER GRANTING IN PART AND**
                                           )   **DENYING IN PART DEFENDANT-**
         and                                )   **INTERVENOR'S MOTION FOR**
                                           )   **PARTIAL SUMMARY JUDGMENT AND**
DOUGLAS COUNTY ASSESSOR,                     )   **DENYING PLAINTIFF'S CROSS-**
                                           )   **MOTION FOR PARTIAL SUMMARY**
              Defendant-Intervenor.          )   **JUDGMENT**

## I.   INTRODUCTION

This property tax case is before the court on cross-motions for partial summary judgment.

Plaintiff appealed the value of the subject property (Account R26931), her personal residence,

for tax year 2020-21.  Plaintiff contests Defendant-Intervenor's (the county's) addition of certain

improvements to the assessment roll as "new."[1] (Ptf's Compl at 1.)  The improvements at issue

(the Asserted Improvements) consist generally of a "house remodel," "office space in the shed,"

/ / /

---

[1] The court refers to the "roll" for a tax year to mean the assessment roll required to be prepared annually by a county assessor pursuant to ORS 308.215.  This order does not distinguish between the assessment roll and the tax roll, which may be combined.  *See* ORS 308.217(2).

and a "covered porch." (Inv's 1st Decl of Rinnert at 4.) The county contends that the Asserted Improvements are "new property or new improvements" (NPNI) under ORS 308.149(6).[2]

The county has moved for partial summary judgment, asking the court to resolve the parties' "conflicting understandings of what it means for property to be 'new,'" pursuant to ORS 308.153(3), the omitted property statutes, and case law. (Inv's Mot Part Summ J at 3.) The county argues that, under a correct understanding of the law, applied to the facts in the record, the Asserted Improvements are NPNI.

Plaintiff's response includes a request, which the court treats as a cross-motion for full or partial summary judgment, that the court conclude that the Asserted Improvements are not eligible to be added to the roll for tax year 2020-21. The court understands Plaintiff to state two alternative positions. On the one hand, she argues that the Asserted Improvements existed when the county physically appraised the property for a prior tax year, such that adding value for them now would amount to a prohibited revaluation of her property. Alternatively, to the extent that Asserted Improvements did not exist as of the last appraisal, they can be added to the roll only under the procedures for adding omitted property, which the county acknowledges it has not followed. (*See* Ptf's Resp at 2-5; Ptf's Obj Inv's Reply at 2-3.) Plaintiff also asserts that some or all of the Asserted Improvements constitute "general ongoing maintenance and repair" or "minor construction." (Ptf's Resp Summ J at 3, 5.)

The county acknowledges that the value of the Asserted Improvements must be determined at trial, and neither party seeks summary judgment on the issue of value.

---

[2] Unless otherwise specified, the court's references to the Oregon Revised Statutes (ORS) are to the 2019 edition.

## II. FACTS

Although many facts remain to be determined at trial, the court makes the following findings, based on undisputed portions of the record to date.

The subject property includes a three-bedroom, one-bathroom house built in 1946, other improvements, and the underlying land. (*See* Inv's 1st Decl of Rinnert at 2; Ex at 10 (Board of Property Tax Appeals order); Ptf's Resp at 1.) It was sold in 2017 for $59,000 and again in approximately September 2019 for $181,000. (*See* Inv's 1st Decl of Rinnert at 2-3; Ex at 6.) In a questionnaire returned to the county in December 2019, the 2019 buyer stated that the house had been remodeled before that sale. (*Id*. at 3; Ex at 6-7.) An employee of the county's office inspected the property on March 11, 2020. (*Id*. at 3-4.) Plaintiff bought the property on or about July 31, 2020, for $213,000. (*See id*., Ex at 8-9 (Douglas County Land Department record); Ptf's Resp at 1 ("plaintiff purchas[ed] the home in 2020").)

For tax year 2020-21, the county determined that the property had a real market value (RMV) of $155,302, which amount included an "exception" RMV of $33,423. (Inv's 1st Decl of Rinnert, Ex at 10.) The county determined a maximum assessed value (MAV) of $103,169. (*See id.*)

Plaintiff appealed, and the board of property tax appeals upheld the total RMV of $155,302 but reduced the exception RMV included within the total to $20,600. (*See id.*) The board set the MAV at $93,372. (*Id.*) Plaintiff appealed to the Magistrate Division, which determined an exception RMV of $32,289. (*See* Ptf's Compl, Ex 1 at 15.) Plaintiff appeals from the magistrate's decision.

/ / /

## III. ISSUES

A. Assuming that the Asserted Improvements otherwise fit the definition of NPNI as of January 1, 2020, does ORS 308.153(3) require the county to redetermine the property's MAV for tax year 2020-21, even if the county could have added the Asserted Improvements to the roll as omitted property but has not done so, or even if the county failed to include their value following a site inspection for a prior tax year?

B. Do the Asserted Improvements fit the definition of NPNI as of January 1, 2020?

## IV. LEGAL BACKGROUND; LEGAL ISSUES UNDER ORS 308.153(3)

A. *Legal Background*

1. *1997: Maximum Assessed Value as a Cap on Growth in Annual Assessed Value*

Each county assessor is required to "assess the value of all taxable property" annually, and to record the RMV, the MAV, and the assessed value (AV) on the assessment roll for the tax year. *See* ORS 308.210(1); *see* ORS 308.215(1).[3] RMV means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction as of the annual assessment date, in this case January 1, 2020.[4] ORS 308.205(1). MAV is a value determined under Oregon's constitutional property tax limitations, informally referred to as "Measure 50," adopted by the people in 1997.

---

[3] Certain kinds of property, not at issue here, are assessed not by the county assessor, but centrally by the Oregon Department of Revenue. *See generally DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 257, 434 P3d 379 (2019).

[4] ORS 308.007(1) defines key dates in the annual assessment process as follows: "'Tax year' * * * means a period of 12 months beginning on July 1." "'Assessment year' means calendar year." "'Assessment date' means the day of the assessment year on which property is to be assessed under ORS 308.210 or 308.250." The latter statutes provide for assessment on January 1. Each assessment year "corresponds to the tax year beginning July 1 of the same calendar year." ORS 308.007(2). An assessor is required to complete the valuation process, certify the roll, and issue annual statements to taxpayers in stages ending no later than October 25 after the assessment date; payment is due November 15. ORS 311.250(1). In this case, the tax year at issue ran from July 1, 2020, through June 30, 2021; therefore, January 1, 2020, is the assessment date.

*See* Or Const Art XI, § 11(1); ORS 308.146. MAV acts as a cap on the growth of AV, in that (1) a property's AV is the lesser of the property's RMV or its MAV and (2) a property's MAV cannot increase more than three percent from one year to the next, unless an exception requires the MAV to be recalculated. *See* ORS 308.146(1), (3).

    2. *MAV Exception for Omitted Property*

One exception event that allows MAV to be recalculated occurs when property is "first taken into account as omitted property." ORS 308.146(3)(d). Since 1907, omitted property laws have expressly required each county assessor, after giving notice and a hearing opportunity, to correct the rolls for the current year and any of the five prior years, in order to record the value of property discovered to have been omitted, so that tax can be collected based on that omitted value. *See* ORS 311.223(1) (assessor "shall proceed to * * * add the property to the tax roll or rolls"); ORS 311.216(1) (applies to omissions on "the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll"); *cf.* Or Laws 1907, ch 267, § 24 (county officer "shall proceed to" add property omitted from the current roll or the roll for any of the five prior years).

For the first tax year for which the assessor adds omitted property to the roll, the property's recalculated MAV is the sum of (1) the MAV as computed without regard to the addition of omitted property and (2) the product of (a) the so-called "exception value" (the RMV of the omitted property) and (b) the so-called "changed property ratio."[5] *See*

---

[5] The changed property ratio is the "average maximum assessed value" divided by the "average real market value." ORS 308.153(1)(b). For most property, these two terms are defined respectively as the average countywide MAV of property in the same class and the average countywide RMV of property in the same class. *See* ORS 308.149(1)-(3). Application of the ratio thus causes the MAV of property being added under an exception to roughly reflect any discount below RMV enjoyed by similar property in the same county.

ORS 308.156(3)(a), (5).  For later tax years, the general three-percent growth cap and other limitations under Measure 50 apply.  *See* ORS 308.156(3)(b).

3. *Village at Main Street (2010):  Improvements Are Not "Omitted Property" if They Were an "Integral Part" of Property When the Assessor Inspected It*

Although the omitted property statutes require an assessor to add previously omitted property to the roll, they also prohibit an assessor from correcting a prior "error in valuation judgment."  *See* ORS 311.205(1)(b)(A); *Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 332-35; 341-42; 345-46, 245 P3d 81 (2010).[6]  Reconciling the "tension" between those two requirements, the Oregon Supreme Court has held that an assessor may not add as omitted property the value of (1) improvements or other property actually listed on a prior-year roll or (2) improvements or other property comprising an "integral part" of property listed on the roll at the time of a physical "inspect[ion]" or "appraisal" of the property by the assessor. *Village at Main Street*, 349 Or at 332-35.  Only property that has not previously been listed or, at the time of inspection, was "distinct" from property listed on the roll, may be added as omitted property. *Id*. at 341.

4. *MAV Exception for New Property or New Improvements*

In addition to creating a MAV exception for the longstanding requirement to add omitted property to the roll, the drafters of Measure 50 created an exception for the addition of "new

---

[6] The Supreme Court in *Village at Main Street* construed a prior version of the statute, which expressly stated that an assessor "may not correct an error in valuation judgment" except to reduce the value or pursuant to a stipulation by the assessor and the taxpayer.  ORS 311.205(2)(b) (2005).  The 2007 legislature amended the statute, removing the broad language quoted, but retaining text that presently lists only one circumstance in which an assessor may correct an error in valuation judgment:  when an appeal has been filed in this court contesting the value, and the correction would reduce the tax owed. *See* ORS 311.205 (2)(b)(A). *See also Clackamas Cty. Assessor v. Village at Main Street I*, 20 OTR 9, 12 n 3 (2009) (discussing amendment and legislative history).  This court concludes that the 2007 amendment did not change the substantive result determined by the Supreme Court in *Village at Main Street*, as discussed in this order.

property" to the roll or the making of "new improvements" to the property. *See* ORS 308.146(3)(a); ORS 308.153(1). If this exception applies, the assessor must recalculate the property's MAV as the sum of (1) the MAV computed as if NPNI had not been added and (2) the product of (a) the so-called "exception value" (the RMV of the NPNI, reduced by the RMV of any retirements, but not below zero) and (b) the changed property ratio. *See* ORS 308.153(2)(a); ORS 308.153(1)(a), (b).

The phrase "new property or new improvements" is defined as "changes in the value of property as the result of" a number of specified events, including "[n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property." ORS 308.149(6)(a). The definition excludes changes in the value of the property as the result of "[g]eneral ongoing maintenance and repair" (commonly known as "GOMAR") or "[m]inor construction," which is defined based on the RMV of improvements made over specified times. ORS 308.149(6)(b); *see* ORS 308.149(5). The text of ORS 308.149(6) does not use the term "recent," nor does it expressly define "new" in a manner that requires property or improvements to have been created or constructed within a specific time period in relation to the assessment date at issue.

a. Former rule under *Crawford* (2012): "new" meant created within the most recent full calendar year

After the people passed Measure 50 in 1997, there was initial uncertainty about how to proceed in those circumstances when both the "new" property exception and the "omitted" property exception require an assessor to add value to the "current" roll.[7] A magistrate decision

---

[7] One reason this uncertainty is relevant is the potential for a difference in assessed value. The current year's MAV for the property as a whole could differ significantly, depending on whether the assessor first added the improvements (a) to a prior year's roll under the omitted property exception, or (b) to the current year's roll under

concluded that NPNI is limited to "property added since the prior year's assessment date, unless omitted property is involved." *Metzger v. Multnomah County Assessor*, No. TC-MD 050231C, 2006 WL 1083378 (Apr 20, 2006). This division later agreed, holding that NPNI must have "come into existence" within the calendar year preceding the January 1 assessment date for the current tax year, and that any improvements made earlier generally "only can be added to the roll or rolls in accordance with the omitted property statutes." *Douglas County Assessor v. Crawford*, 21 OTR 6, 11-12 (2012), *abrogated by DISH Network*.

Together, *Village at Main Street* and *Crawford* addressed the following scenarios:[8]

(1)    *Improvements no more than one year old.* Under *Crawford*, improvements created during the calendar year preceding the January 1 assessment date for the current tax year were "new,"[9] but not "omitted," and an assessor was required to recalculate the property's MAV to take them into account on the current-year roll under ORS 308.146(3)(a).

(2)    *Improvements older than one year.* Improvements created earlier were not NPNI for purposes of a MAV recalculation. However:

   a.    The assessor was required to treat them as "omitted property," adding them to applicable prior-year rolls and the current-year roll under 311.216, ORS 308.146(3)(d), ORS 308.156(3) and (5), unless:

   b.    Their value was deemed to have been included in the property's overall value pursuant to *Village at Main Street* because they were listed on a prior year's roll,

---

the exception for new property or new improvements. This is because the RMV of the improvements is used to recalculate the MAV, and the RMV of any property (including improvements) typically varies from year to year. Likewise, the changed property ratio may vary from year to year as well. Thus, addition to a prior year's roll under (a) results in a current-year MAV that is based on that prior year's RMV and changed property ratio, subject to the annual three-percent cap on growth in MAV, while addition to the current year's roll under (b) results in a current-year MAV based on the current year's RMV and changed property ratio. *Compare* ORS 308.146(1) (limiting MAV for each year to 103 percent of the previous year's MAV, including property previously added as "omitted") *with* ORS 308.156(5)(b) (applying the current year's RMV of new property in the formula for recalculating MAV).

[8] No inference should be drawn as to whether the scenarios described in this order encompass all possible scenarios involving "new" or "omitted" property.

[9] In all scenarios, this order assumes that the improvements were not GOMAR or minor construction, and that they otherwise fit within the definition in ORS 308.149(6).

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT-INTERVENOR'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT   TC 5440

or they were an "integral part" of existing property (as opposed to "distinct" from existing property) when an assessor inspected the property for a prior year. The prohibition against correcting a valuation error prevented the assessor from adding their value to the roll as omitted property for the year for which the assessor inspected and valued the property or for any later year.

b. *DISH Network* (2019) overturns *Crawford*; "new" means added to a property tax account for the first time

The Oregon Supreme Court's decision in *DISH Network v. Dept. of Rev.*, 364 Or 254, 434 P3d 379 (2019) overturned *Crawford*, holding that an assessor must apply the "new property or new improvements" exception in order to recalculate ORS property's MAV for the current tax year even if the property was created before the immediately prior calendar year, and even if the assessor was required, but failed, to add the property to the current-year roll and prior-year rolls as omitted property.[10] *See id.* at 282-83 (Measure 50 exceptions for NPNI and "property first taken into account as omitted property" "overlap" and are not "mutually exclusive"). The court rejected *Crawford*'s "temporal" test, holding that property is "new" if it has not previously been assessed to a property tax account. *See id.* at 288; *Crawford*, 21 OTR at 10. *DISH Network* does not mention, or purport to modify, *Village at Main Street.*

Under *DISH Network*, the foregoing scenarios are modified as follows:

(3) *Improvements no more than one year old.* Improvements created during the calendar year preceding the January 1 assessment date for the current tax year were "new," simply because those improvements were "property that has not previously been assessed to a property tax account." *DISH Network*, 364 Or at 288. The assessor was required to recalculate the property's MAV to take them into account on the current-year roll under ORS 308.146(3)(a).

---

[10] In *DISH Network*, the assessor was the Department of Revenue because the property at issue was centrally assessed. Two sets of omitted property statutes exist: ORS 308.628 to 308.636 (added by Or Laws 2007, ch 616) apply to centrally assessed property, while ORS 311.205 to 311.232 apply to locally assessed property. *DISH Network* refers only to the older, more widely used statutes applicable to locally assessed property, presumably because the parties "discuss[ed] the 'omitted property' exception purely as context for understanding the meaning of the 'new property' exception * * *." 364 Or at 278 n 25.

(4)    *Improvements older than one year.*  Improvements created earlier were also "new," if their value had not previously been assessed to a property tax account.

    a.  If the assessor added the value of the improvements to a prior-year roll as omitted property under ORS 311.216, then the improvements were "previously * * * assessed," and the assessor could not treat them as "new" for the current-year roll under ORS 308.153.

    b.  If "the assessor has chosen not to attempt retroactive assessment to a prior tax roll," then the improvements remained new, even if the improvements arguably were eligible to be assessed as omitted property.  *DISH Network*, 364 Or at 283.

    c.  If the improvements were listed on a prior year's roll, or if they were an "integral part" of listed property (as opposed to "distinct" from listed property) when an assessor inspected the property for a prior year, then:

        i.  Under the omitted property laws as construed in *Village at Main Street*, the assessor was deemed to have taken the value of the NPNI into account for the year for which the assessor inspected and valued the property, even if the result was an undervaluation of the property.  The assessor could not add the value of the NPNI to any year's roll as omitted property.  *See* 349 Or at 332 ("Once a tax assessor has determined the value of property and listed it on the assessment roll, the assessor may not correct the value listed on the assessment roll merely because he or she 'would [now] arrive at a different opinion of value.'") (quoting *former* ORS 311.205(1)(b) (2005)).

        ii.  *DISH Network* had no occasion to address whether the deemed undervaluation and inclusion of the improvements on the prior year's roll for purposes of omitted property law also meant that the improvements were deemed to have been "previously * * * assessed to a property tax account" and thus could not be NPNI.  If so, the improvements could not cause a MAV recalculation under the NPNI exception in ORS 308.146(3)(a).

**B.**    *Legal Issues Under ORS 308.153(3)*

The court considers the foregoing legal background settled.  However, the parties' motions in this case require the court also to apply ORS 308.153(3), which has not been construed by a court of record and is ambiguous on certain points relevant to this case.  Because

the parties have not presented argument on these statutory interpretation questions, the court will, at this stage of the case, provide its tentative reasoning and conclusions using the framework in *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009).  The parties may present any differing views at trial or as otherwise allowed by the court's rules.

1.  *ORS 308.153(3) Requires Assessor to Add Certain Improvements as NPNI*

In 2015, after this court's 2012 decision in *Crawford* but before the Supreme Court's 2019 decision in *DISH Network*, the legislature enacted the current version of ORS 308.153(3), which applies to tax years beginning on or after July 1, 2015.[11]  *See* Or Laws 2015, ch 97, §2. Subsection (3) of ORS 308.153 states:

> "(3)(a) For purposes of this section, property shall be considered new property, or new improvements to property, for a tax year if the property:
>
> "(A) Constituted an integral part of the land or improvements on the assessment date or the date of a site inspection by the assessor for appraisal purposes for any prior tax year;
>
> "(B) Has been continuously in existence since the prior tax year; and
>
> "(C) Was not included in the assessment of the land or improvements for any prior tax year.
>
> "(b) The following is evidence that the property was not included in the assessment of the land or improvements for a prior tax year:
>
> "(A) There is no express reference to the property in the records of the assessor; and
>
> "(B) The assessor's valuation of the land or improvements of which the property

---

[11] *DISH Network* involved tax years mostly before tax year 2015; neither the Supreme Court's opinion nor this court's substantive order discusses ORS 308.153(3).  DISH Network Corporation initially challenged its assessment for tax year 2009-10.  It then filed a complaint in this court after each annual assessment was made for the tax years 2010-11 through 2016-17; this court consolidated all years' cases.  *See DISH Network*, 364 Or at 263-64 & n 13; *id.* at 254 (listing Tax Court case numbers); Appellant's Opening Brief, Excerpt of Record at ER 45-48, *DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 434 P3d 379 (2019) (SC S065019).  Thus, the first six of the eight tax years at issue in *DISH Network* predate the applicability of the 2015 amendments to ORS 308.153.  The Supreme Court remanded all of the consolidated cases to this court, but DISH Network Corporation filed notices of voluntary dismissal shortly thereafter.

is an integral part increases as a result of inclusion of the property in the assessment."

Or Laws 2015, ch 97, §§ 3, 3a.

Subsection (3) of ORS 308.153 states three conditions that, if satisfied, will cause the Measure 50 exception for "new property or new improvements" to apply. Setting aside for the moment the ambiguities discussed below, the conditions appear to generally describe improvements or other property which, under *Village at Main Street*, an assessor is deemed to have undervalued, and which the assessor thus is precluded from adding to any year's roll *as omitted property*. *See* 349 Or at 341-42 (assessor may not add as omitted property the value of property that was an integral part of existing property at the time of a site inspection for a prior year, if the assessor failed to add the value to that prior year's roll). Without disturbing that rule, ORS 308.153(3) appears to require the assessor to add the value of those improvements or other property to the current year's roll *as new property*, even if the improvements are more than one year old under *Crawford*'s former "temporal" test. Moreover, ORS 308.153(3) requires the assessor to add the value of the improvements even if they are an "integral part" of existing property and thus are deemed to have been included, but undervalued, on a prior year's roll under *Village at Main Street*. The court will return to these tentative conclusions after resolving the following ambiguities.

a.      Are the conditions expressed by "if" in ORS 308.153(3)(a) exclusive?

The court must determine whether the legislature intended that *any* property must satisfy the three conditions before that property may be considered NPNI under ORS 308.146(3)(a) and ORS 308.153(1), or whether the legislature intended the conditions to define only a subclass of NPNI, leaving open the possibility that other subclasses also could be NPNI. *See Crimson Trace*

*Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 497, 232 P3d 980 (2014) (explaining

principles for determining whether a statutory list is exclusive of items not listed). If

ORS 308.153(3) is exclusive, then *all* NPNI must satisfy the integral part condition in

ORS 308.153(3)(a)(A), as well as the other two criteria in ORS 308.153(3)(a)(B) and (C). In

terms of the scenarios discussed above, an exclusive interpretation of ORS 308.153(3)

potentially would have the counterintuitive result of precluding an assessor from treating as

NPNI any improvements created within the calendar year preceding the January 1 assessment

date for the current tax year (Scenarios 1 and 3), in direct opposition to the then-current rule in

*Crawford*, as well as the rule later announced in *DISH Network* (Scenarios 1 and 3 above).[12]

The text of the statute is not expressly exclusive, because it does not say that property

shall be considered NPNI "only if" the property satisfies the three conditions. On the other hand,

the statute also does not give direct clues that it is nonexclusive; it does not clearly leave open

the possibility that improvements that do not satisfy the three conditions still could be NPNI.

For example, the statute does not say that improvements are NPNI "even if" they satisfy the

three conditions, or "notwithstanding" the general definition of NPNI in ORS 308.149(6). The

court turns to context and relevant legislative history.

The statutory context includes *Crawford*, the case law that was in place when the

legislature enacted ORS 308.153(3). *Montara Owners Assn. v. La Noue Development, LLC*, 357

Or 333, 341, 353 P3d 563 (2015) ("The context for interpreting a statute's text includes the

---

[12] This assumes that the court also would interpret the temporal limitation "on the assessment date" in ORS 308.153(3)(a)(A) to refer to the assessment date "for any prior tax year," which is the next ambiguity discussed below.

preexisting common law, and we presume that the legislature was aware of that existing law."). With that context in mind, the court is inclined to read the absence of any express textual signals (such as "only if") to mean simply that the legislature accepted, and did not seek to change, the rule that property created within the calendar year preceding the January 1 assessment date for the current tax year was new.

The legislative history is consistent with that reading of the text. Polk County Assessor Douglas Schmidt testified to the House Committee on Revenue, giving the hypothetical example in which an assessor's staff inspects an apartment complex on two occasions. On the first inspection, the staff "d[oes] not value" 24 of the apartment units in the complex and fails to "represent[ them] in the Assessment Records." Testimony, House Committee on Revenue 12129, Mar 23, 2015, (written statement of Polk County Assessor Douglas Schmidt). As Schmidt explained, "This could happen for any number of reasons; distraction during inspection, lost work papers, lack of access to a property, etc." *Id.* As a consequence, "[t]he next time someone from the Assessors Office visits the property and wants to add Real Market Value and Maximum Assessed Value to the account for the missed units, the courts have ruled we cannot add the value of the missed property to the Maximum Assessed Value. The value that was missed is considered 'under valued' and not omitted. The change proposed in this Bill would allow assessors to add value to the Maximum Assessed Value for the current Tax Year and forward." *Id.* The testimony addresses the problem of changes an assessor overlooked in a site inspection for a prior year but says nothing about changes made in the year preceding the current-year assessment date. The court sees the testimony as an indicator that ORS 308.153(3) is nonexclusive as to improvements created during the latter period. *Cf. Moore v. City of*

*Eugene*, 308 Or App 318, 334-35, 482 P3d 190 (2020) (declining to apply maxim of *expressio unius est exclusio alterius*; concluding that ballot measure voters enacting express building size standards as to one class of property did not intend to extend the standards to another class of property); *see also Dept. of Human Services v. C.M.H.*, 301 Or App 487, 493-94, 455 P3d 576 (2019) (similar; statutory list of dispositions treated as judgments in juvenile proceedings not exclusive and does not exclude judgments that are authorized elsewhere in the juvenile code), *aff'd on other grounds* 368 Or 96, 486 P3d 772 (2021).

The court tentatively concludes that ORS 308.153(3) is a nonexclusive set of conditions that, if they exist, cause improvements or other property to be new. If those conditions do not exist for a particular property, then other law applies, including the principles of *DISH Network*.

b.  Does "the assessment date" in ORS 308.153(3)(a)(A) refer to the assessment date for the current "tax year" in ORS 308.153(3)(a), or to the assessment date "for any prior year" in ORS 308.153(3)(a)(A)?

The opening clauses of ORS 308.153(3)(a) provide: "For purposes of this section, property shall be considered new property, or new improvements to property, *for a tax year* if the property [satisfies the conditions in ORS 308.153(3)(a)(A) through (C)]." (Emphasis added.) The court understands "a tax year" to refer unambiguously to the current tax year, *i.e.*, the tax year for which the assessor currently is preparing the roll, in this case, tax year 2020-21.

However, the court finds an ambiguity in subparagraph (A), which states the first condition of the "if" clause in ORS 308.153(3)(a). The property must have "[c]onstituted an integral part of the land or improvements on *the assessment date* or the date of a site inspection by the assessor for appraisal purposes *for any prior tax year* * * *." (Emphases added.) In the

absence of any commas, "the assessment date" appears ambiguous because it could be read to mean the assessment date for the current tax year (referred to previously in paragraph (a)) or to mean the assessment date "for any prior tax year" (referred to later in subparagraph (A)). If "the assessment date" means the assessment date for the current year, then in this case, the condition in subparagraph (A) is fulfilled if the improvements were an integral part of other real property on January 1, 2020. Based on the context of case law discussed above, the court finds it more plausible that the phrase refers to "the assessment date * * * for any prior tax year." As discussed, before *DISH Network*, the legislature would have understood that the former rule in *Crawford* already treated improvements as new if they were created during the calendar year preceding the January 1 assessment date for the current tax year. Thus, the legislature would not have needed to adopt a new law to provide that result, particularly a law that the evidence otherwise suggests imposed only a set of nonexclusive conditions.

As applied in this case, the court tentatively concludes that ORS 308.153(3)(a)(A) requires the improvements to have existed, and to have been an integral part of the real property, on either or both of (1) January 1 of 2019, 2018, or some other year "prior" to 2020; or (2) the date of a site inspection "for" a year prior to tax year 2020-21.

   c.   Does property that "[w]as not included in the assessment" for any prior tax year refer to property whose *value* was not included in the assessment, even if the property otherwise was deemed to have been listed on the roll as an integral part of other property?

Finally, the court finds an ambiguity in the condition stated in ORS 308.153(3)(a)(C), which treats improvements as "new" if they were "not included in the assessment of the land or improvements for any prior tax year." This court previously has found the term "assessment" to

refer to any of the assessor's numerous statutory duties, including the primary functions of valuing the property and recording the value and other data points on the annual roll, as well as the follow-on duties of computing, billing and collecting a specific amount of tax owed.[13] *See* ORS 308.215 (requiring assessor to compile and record data on the roll); *Gray v. Dept. of Rev.*, 23 OTR 220, 230-31 (2018). Property "not included in the assessment" could, therefore, refer to improvements that an assessor failed to value, or to improvements that the assessor failed to list on the assessment roll, or both. The ambiguity is illustrated in *Village at Main Street*, and in this court's opinion in *West Foods*, 10 OTR 7 (1985). In both cases, the assessor physically appraising property overlooked or otherwise failed to "include" the *value* of specific improvements on the roll, but still was deemed to have "listed" the improvements on the roll as an "integral part" of other real property.[14]

Here, the statutory text squarely addresses the *West Foods* and *Village at Main Street* scenarios by requiring the improvements to have been an "integral part" of property listed on the roll. ORS 308.153(3)(a)(A). Because improvements are considered inseparable from other

---

[13] Oregon statutes generally assign billing and collection functions to the "collector," but those could be the same person. *See* ORS 311.020.

[14] In both *West Foods* and *Village at Main Street*, the assessor failed to include the value of identifiable improvements that were an integral part of property listed on the roll--unknowingly in *West Foods*, and knowingly in *Village at Main Street*. *See West Foods v. Dept. of Rev.,* 10 OTR 7, 10 & n 3 (1985) ("The * * * field notes made for the 1973 appraisal included the [mushroom] growing rooms but did not include the growing beds in the rooms. * * * [T]he former appraiser simply 'missed' the growing beds. * * * Some mention appears in the record that the [former] appraiser did not open the doors to the growing rooms."). The court in *West Foods* treated the assessor's failure to include the growing beds as "an undervaluation of the growing rooms and not as an omission" of property. *Id.* at 11. On the other hand, in *Village at Main Street*, the parties stipulated that "[t]he county appraiser had * * * portions of the plans and specifications" and "was aware of the existence of" the improvements at issue. *Clackamas Cty. Assessor v. Village at Main Street I*, 20 OTR 9, 10 (2009). The county nevertheless failed to include any value attributable to the improvements on the roll for the first year after the improvements were made. *See id.* The Supreme Court held that those improvements, too, did "not come within the definition of omitted property * * *." *Village at Main Street*, 349 Or at 346. This order does not address whether ORS 308.153(3) requires the court to distinguish between an assessor's knowing and unknowing failures to include the value on the roll.

property of which they are an integral part, and assuming that the other property is listed on the roll, the court infers that the phrase "not included in the assessment" requires only that the *value* of the improvements must not have been added to the roll.[15]

Context supplied by subsection (b) of ORS 308.153(3), and by the nearby general definition of "new property or new improvements" in ORS 308.149(6), further suggests that the legislature was concerned primarily or solely with unaccounted-for value. Under subsection (b), one item of "evidence" that the property was not included in the assessment is that the assessor's valuation increases "as a result of inclusion of the property in the assessment," a situation more likely if the value was not previously included. ORS 308.153(3)(b)(B).[16] And ORS 308.149(6) *defines* "new property or new improvements" as "*changes in the value* of property" as the result of remodeling or various other listed events. (Emphasis added.)

The legislative history, as already discussed, is consistent with a construction of "not included in the assessment" to mean not valued. Specifically, assessor Schmidt, appearing as a proponent, testified that the amendments to ORS 308.153(3) would allow prospective assessment of "value that was missed[, which] is considered 'under valued' and not omitted." Testimony, House Committee on Revenue 12129, Mar 23, 2015, (written statement of Polk County Assessor Douglas Schmidt).

The court tentatively concludes that "property not included in the assessment" means property whose value the assessor did not include in the assessment, even if the property

---

[15] *See Village at Main Street*, 349 Or at 345-46 (site developments, such as grading, roads, and storm drains, "would be difficult to separate" from land and are an "integral part" of land).

[16] The other item of evidence is the absence of any express reference to the purportedly "new" property in the "records of the assessor," apparently referring to the assessor's working files rather than to the published roll itself. ORS 308.153(3)(b)(A).

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT-INTERVENOR'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT   TC 5440

otherwise was deemed to have been listed on the roll as an integral part of other property.

2. *Scenarios, as Modified Under ORS 308.153(3)*

In summary, the court tentatively concludes that ORS 308.153(3) applies only to property that satisfies the three statutory conditions, and only to improvements or other property created before the calendar year preceding the January 1 assessment date for the current tax year. Although *DISH Network*, standing alone, might have treated property described in ORS 308.153(3) as not "new," on the grounds that it already had been "assessed to a property tax account" as an integral part of other property, ORS 308.153(3) modifies the statutory definition of "new," creating an exception.[17] That exception applies when one of the triggering events in ORS 308.149(6) occurs (remodeling or any other addition of property to the account that is not GOMAR or "minor construction") and the three conditions of ORS 308.153(3) are satisfied. Accordingly, the court tentatively concludes that the following modified scenarios apply under ORS 308.153(3):

(5) *Improvements no more than one year old.* Improvements created during the calendar year preceding the January 1 assessment date for the current tax year are "new," simply because those improvements are "property that has not previously been assessed to a property tax account." *DISH Network*, 364 Or at 288. The assessor is required to recalculate the property's MAV to take them into account on the current-year roll under ORS 308.146(3)(a).

(6) *Improvements older than one year.* Improvements created earlier are also "new," if their value has not previously been assessed to a property tax account.

   a. If the assessor added the value of the improvements to a prior-year roll (1) as new property, or (2) as omitted property under ORS 311.216, then the improvements were "previously * * * assessed to a property tax account,"

---

[17] The court notes that Measure 50 does not define "new." *See DISH Network*, 364 Or at 285-88 (Measure 50 analysis of "new property").

and the assessor may not treat them as "new" for the current-year roll under ORS 308.153.

b. If the assessor (1) has not added the value of the improvements to a prior-year roll as new property, and (2) "has chosen not to attempt retroactive assessment to a prior tax roll," then the improvements remain new, even if the improvements arguably are eligible to be assessed as omitted property. *DISH Network*, 364 Or at 283.

c. If the assessor inspected the property for a prior year, and the improvements were an "integral part" of listed property for that prior year, then under *Village at Main Street* their value is deemed to have been included on the roll for the year for which the assessor inspected and valued the property, even if doing so resulted in an undervaluation of the property. The assessor may not add their value to the roll *as omitted property* for any tax year. *See* 349 Or at 332. However, under ORS 308.153(3), notwithstanding the theory of *Village at Main Street* and the statutory prohibition against correcting an undervaluation for omitted property purposes, the assessor must treat the value of the improvements as NPNI for purposes of the MAV recalculation requirement under ORS 308.146(3)(a) if the three conditions in ORS 308.153(3) are satisfied.

## V.  APPLICATION TO FACTS

A.  *County's Authority to Treat Asserted Improvements as "New" Even if They Also Are "Omitted Property"*

The county asks the court to determine that the fact that it "did not follow the omitted property process" does not prevent it from adding improvements to the tax year 2020-21 roll as NPNI and redetermining the property's MAV. (Inv's Mot Part Summ J at 3; Inv's Reply at 6.) Plaintiff argues the opposite. (*See* Ptf's Resp at 2.)

As the analysis above shows, the county's position is plainly correct. Under *DISH Network*, improvements are new if they have not previously been assessed, even if the assessor could have assessed them as omitted property. The court will grant the county's motion to the extent of ordering that the case may proceed even though the assessor has not treated any of the Asserted Improvements as omitted property for any year. The court will deny Plaintiff's cross-

motion to the extent that that motion asks the court to order that the RMV, MAV, or AV for tax year 2020-21 may not take into account the value of NPNI merely because the county has failed to follow the procedures to add them as omitted property.

B.      *County's Authority to Treat Asserted Improvements as "New" Even if the County "Undervalued" Them in a Site Inspection for a Prior Tax Year*

Plaintiff appears to argue that some of the Asserted Improvements cannot be added to the roll as NPNI for tax year 2020-21 because they were in place at the time of a site inspection or appraisal for a tax year before 2020-21. (Ptf's Resp at 1-5.) The county disagrees, citing ORS 308.153(3). On this point, too, the county's position is correct on the law. *Village at Main Street* continues to prohibit an assessor from adding improvements deemed to have been undervalued in a prior-year site inspection *as omitted property*. However, ORS 308.153(3) requires the assessor to add those improvements *as "new"* when the three conditions are satisfied. The court will grant the county's motion to the extent of ordering that the case may proceed as to any Asserted Improvements that are NPNI under the general definition in ORS 308.149(6) and that satisfy the three conditions in ORS 308.153(3).

C.      *Issues to be Decided at Trial*

The remaining issue is whether, or to what extent, NPNI existed as of January 1, 2020, under the law as described above. A party can prevail as to its motion only if the court concludes that there is no "genuine issue of material fact" and that the party is "entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C. In weighing each motion, the court must view the record "in a manner most favorable to the adverse party * * *." *Id.* The party opposing a motion for summary judgment has the "burden of producing evidence" to the extent she would have the burden of persuasion at trial. *Id.* This means that the party opposing the motion "may not rest

upon * * * mere allegations or denials," but must respond with declarations or other evidence that "set[s] forth specific facts showing that there is a genuine issue as to any material fact for trial." TCR 47 D. Failure to so respond will cause the court to grant the motion if appropriate. *See id.*

1. *Did new property or new improvements exist as of January 1, 2020?*

To begin, the court concludes as a factual matter that any Asserted Improvements that exist were added to the property prior to January 1, 2020, even though the county's employee inspected the property more than two months later, on March 11, 2020. The court reaches this conclusion based upon the parties' declarations, which when read together, rule out the possibility that they might have been added after January 1, 2020. (Inv's 1st Decl of Rinnert at 2.) ("Sometime between December 8, 2017 and July 17, 2019, the house was remodeled, a deck and cover were added, and the general purpose shed was converted into an office."); Ptf's Decl of Dunne at 1 ("[A] preponderance of the evidence [shows that] the property at 375 Birch St has been in existence long before 2020.").)

The court moves on to consider the county's position that the Asserted Improvements were NPNI as of January 1, 2020. The court concludes that the county is not entitled to prevail as a matter of law because a genuine issue of material fact exists as to whether some or all of them had been previously assessed. The county relies on its employee's declaration that "[t]o the best of my knowledge, I believe that, prior to the March 11, 2020[,] inspection, the assessor's records contained no information about the remodel of the house, the addition of the deck and porch, or the conversion of the shed to an office." (Inv's 1st Decl of Rinnert at 4.) Plaintiff has put forward documents, some of which appear to be from the county's own records, showing that the county had knowledge of some improvements prior to the March 2020 inspection. (*See* Ptf's

Resp, Ex 1 (including a 1997 note from the county stating "they have added a ½ bath" to the shed).) The county's declarant has replied that Plaintiff's documents are not relevant or are not from the county's records. (Inv's 2nd Decl of Rinnert at 3-4; 3rd Decl of Rinnert at 2-5.) By its nature, this conflicting testimony should be evaluated by the court in its role as factfinder at trial. The court concludes that a genuine issue of material fact exists as to whether any of the Asserted Improvements previously were assessed to the property tax account, including as "undervalued" improvements constituting an integral part of the property. The court finds these documents sufficient to conclude that there is a genuine issue of material fact as to which of the Asserted Improvements, if any, were on the roll for a prior year.

For the same reason, Plaintiff is not entitled to prevail as to her assertion that the Asserted Improvements did *not* constitute NPNI. (Ptf's Resp at 4-5.)

The court concludes that trial is needed to resolve whether, or to what extent, the Asserted Improvements previously were assessed.

2. *To what extent were changes to the property value GOMAR or minor construction, rather than NPNI?*

The court now turns to Plaintiff's argument that some or all of the changes in value that the county attributes to the Asserted Improvements actually constitute GOMAR or minor construction.

This court has previously considered what constitutes GOMAR and minor construction. In *Strom v. Dept. of Rev.*, the court concluded that work did not constitute GOMAR because the "taxpayer did not preserve the existing improvements without significantly changing the materials. Much of the existing materials were removed, discarded, and replaced with new materials." 15 OTR 309, 313 (2001). Therefore, the court found that the work was not

GOMAR, "but work that constituted remodeling, renovation, and rehabilitation." *Id.*[18] In *Hoxie v. Dept. of Rev.*, this court held that four projects were "new improvements" (a new entrance, new staircase, realigned lobby, and changes in walls, bathrooms, floors, wiring, alarms, windows and lights), but "cleaning and painting of the exterior walls and windows" were not "new improvements." 15 OTR 322, 326 (2001). In *Magno v. Dept of Rev.*, the taxpayer "gutted and rebuilt over half the home; added approximately 1,000 square feet to its size; and significantly updated, remodeled, and refurbished the rest of the home and the landscaping." 19 OTR 51, 53 (2006). The court held that these activities gave rise to exception value because there "was nothing minor or routine about taxpayer's remodel." *Id.* at 64.

The Department of Revenue has adopted an administrative rule defining GOMAR as activity that:

> "(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;
>
> "(B) Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;
>
> "(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and
>
> "(D) For income producing properties is part of a regularly scheduled maintenance program."

OAR 150-308-0130(2)(a).

---

[18] In *Strom*, the taxpayer "removed the outside siding, interior walls in the front portion of the house, roof, windows, doors, and kitchen cabinetry and * * * entirely rewired for electricity, replumbed for water, and insulation was installed throughout." 15 OTR at 310. Taxpayer also made all the doorways ADA compliant and "installed a new bathroom floor, toilet, sink, and reconditioned the tub." *Id.* Taxpayer "installed a new sink, tile countertops, and flooring" in the kitchen and "replaced the front concrete walk and installed a new driveway" outside. *Id.*

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT-INTERVENOR'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DENYING
PLAINTIFF'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT   TC 5440

The legislature has defined "minor construction" as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5). The cases cited above note that the test is whether the work "increases the RMV" by the requisite amount, not "the cost of the work." *Strom*, 15 OTR at 313-14; *see Hoxie*, 15 OTR at 326-27 (stating test as measuring "the net increase in value as a result of the improvements" and lamenting the difficulty of isolating the increase in RMV due to improvements due to the "myriad of factors" impacting a property's RMV).

The county argues that the Asserted Improvements are GOMAR, citing the rule. According to the county:

(1) The addition of the deck and cover fail elements (A) and (B) because they were not the preservation of existing improvements and were instead new structures.

(2) The conversion of the shed does not satisfy element (B) because it involved additions to existing structures.

(3) The work on the house fails element (C) because the changes made constituted a "renovation" that modernized or remodeled the house. *See* OAR 150-308-0130(1)(e) (defining "renovation").

(Inv's Mot Part Summ J at 7-9.)

The court cannot rule on summary judgment as to whether the Asserted Improvements constitute GOMAR or minor construction. Neither party has put forward sufficient evidence for the court to conclude as a matter of law whether the Asserted Improvements replaced existing materials with new materials to an extent to be considered more than GOMAR, or whether the RMV of improvements exceeded $10,000 in one year or $25,000 over five years. It is not clear to the court what amount of replacement of materials was completed during what the county characterizes as a "remodel[]." (Inv's 1st Decl of Rinnert at 3-4 (characterizing many items as

new but providing no substantiation).) Due to the genuine issue of material fact as to whether the cover and deck are NPNI, the court also is unable to determine as a matter of law whether any replacement of materials constitutes GOMAR. Likewise, due to the uncertainty of the timing of the conversion of the shed, the evidence is insufficient as to whether those changes constitute GOMAR. The county's assertion that the shed "was converted to an office, with electric, heat, laundry, and a bathroom" is insufficient to reach a conclusion as a matter of law because it does not specify over what period that conversion occurred. (Inv's 1st Decl of Rinnert at 4.)

Due to genuine issues of material fact, the court will deny the cross-motions for partial summary judgment to the extent that they seek a determination as a matter of law regarding the Asserted Improvements' status as GOMAR or minor construction.

## VI. CONCLUSIONS

To summarize, the court has identified the following fact issues:

(1) Whether or to what extent renovation of the main house was assessed prior to January 1, 2020.

(2) Whether or to what extent the deck and cover were assessed prior to January 1, 2020.

(3) Whether or to what extent improvements to the shed were assessed prior to January 1, 2020.

(4) Whether renovation of the main house constituted GOMAR or minor improvements.

(5) Whether improvements to the deck and cover constituted GOMAR or minor improvements.

(6) If improvements to the shed were assessed prior to January 1, 2020, whether any improvements made since the prior assessment constituted GOMAR or minor improvements or should be considered new property or new improvements.

(7) Whether the Asserted Improvements may be considered NPNI under ORS 308.153(3). Specifically, whether each improvement:

    a. Constituted an "integral part of the land or improvements" on either the assessment date, January 1, 2020, or the site inspection for a prior tax year;

    b. "Has been continuously in existence since the prior tax year"; and

    c. "Was not included in the assessment of the land or improvements for any prior tax year."

To the extent the parties require resolution of other legal issues, they may seek that at trial, including in post-trial memoranda, or as otherwise provided in the court's rules. Now, therefore,

IT IS ORDERED that Defendant-Intervenor's Motion for Partial Summary Judgment is granted in part and denied in part; and

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment contained in her Response to Summary Judgment is denied.

Dated this 5th day of January, 2024.

1/5/2024 12:55:57 PM

**Judge Robert T. Manicke**

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT-INTERVENOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT   TC 5440

Page 27 of 27